THE BROCKTON KNIGHTS OF COLUMBUS BUILDING ASSO-
CIATION, INC., *vs.* ASSESSORS OF BROCKTON
(and two companion cases between the same parties).

Suffolk.   November 8, 1946. — March 4, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN & SPALDING, JJ.

*Taxation,* Real estate tax: exemption.   *Charity.*

Facts set forth in a "case stated" were not necessarily inconsistent with
and warranted a conclusion by the Appellate Tax Board that, although
the corporate purposes of a corporation owning certain land with a
building thereon were charitable and none of its income was divided
among its members and it derived no profit from operation of the
property, the dominant use and occupation of the building, including
use without charge by various other organizations, many of which
were not charitable, and maintenance and use of various recreational
and other facilities and the sale of sundry articles, from which a sub-
stantial revenue was derived, were not for the corporation's declared
charitable purposes; and it was not entitled to exemption from taxa-
tion of such real estate under G. L. (Ter. Ed.) c. 59, § 5, Third.

THREE APPEALS from decisions by the Appellate Tax
Board.

*D. J. Triggs,* for the taxpayer.

*H. C. Gill,* (*E. Blumberg* with him,) for the assessors of
Brockton.

DOLAN, J.   These are three appeals under G. L. (Ter.
Ed.) c. 58A, § 13, as amended, by The Brockton Knights of
Columbus Building Association, Inc. (hereinafter referred
to as the taxpayer), from decisions of the Appellate Tax
Board denying abatements of local taxes assessed against
the taxpayer for the years 1941, 1942 and 1943 on real estate
owned by it in the city of Brockton.   Abatement was sought
by the taxpayer on the ground that under the provisions
of G. L. (Ter. Ed.) c. 59, § 5, [1] the real estate involved was

---

[1] The pertinent provisions of the statute are these: "The following prop-
erty and polls shall be exempt from taxation . . . Third, Personal property
of literary, benevolent, charitable and scientific institutions and of temper-
ance societies incorporated in the commonwealth [and] the real estate owned
and occupied by them or their officers for the purposes for which they are
incorporated . . . ."

exempt from taxation. The petitions were heard together by the board upon a "case stated" and an "amendment of 'case stated.'" The facts as to each petition were the same in each of the years involved except as to the respective amounts of the taxes assessed.

The relevant facts are these: The taxpayer was incorporated in 1920 under the provisions of R. L. c. 125. All of its incorporators were members of Seville Council No. 93 of the Knights of Columbus. The declared purposes of the corporation are those of "engaging in and promoting work of a literary, benevolent and scientific nature; of promoting physical, mental and moral education and welfare; and of doing such other acts and things as may assist in the promotion and achievement of the foregoing purposes. While the corporation may have purposes that are different from the purposes of the Knights of Columbus, it shall have no purpose that shall conflict with the purposes, principles and laws of the Knights of Columbus, but on the contrary said purposes and principles of the Knights of Columbus so far as they are or shall be included in the above stated purposes are and shall be always among the dominant and controlling purposes of the corporation." Membership in the taxpayer is composed exclusively of all who are members in good standing of Seville Council No. 93 of the Knights of Columbus, a fraternal benefit society organized under the laws of the State of Connecticut in 1882. The land involved was conveyed to the taxpayer in 1921 as a gift, and in 1928 the taxpayer erected a building thereon at a cost of $91,969. The cost of the building, furnishings and equipment, exclusive of the library, was met by donations made by members of the taxpayer and by others, and by a loan of $20,000.

The building, which is of brick construction, has a floor area of sixteen thousand sixty-five square feet. There are showers, lockers, four bowling alleys, a long hall, a stock room and a boiler room in the basement of the building. On its first floor there are a large lounge, a reading room, a large pool and billiard room, a lavatory, a library, two recreation rooms, a committee room, a treasurer's office, a

steward's office and a cloak room.  On the second floor are a kitchen, a hall (ninety feet long and forty feet wide), a women's lounge, lavatories, a lodge room, a coat room and a small hall.  The valuation placed on the real estate by the assessors in each of the years involved was $30,000.

Subject to the approval of the board of directors, the executive committee manages the building, and during the years in question has allowed the facilities of the building to be used by some forty-five organizations, without charge, as headquarters for planning or engaging in programs and activities calculated to improve their members and others mentally, morally or physically.  Among those organizations were four councils of the Knights of Columbus, the American Red Cross, The Boy Scouts of America, the Girl Scouts, Inc., bowling leagues, a golf club, the Buy American Committee, the Old Colony Commuters League, the Brockton Cosmetologists Association, The Scribblers Club, the Boost Brockton Committee, a local teachers association, an athletic association, and groups of persons affiliated with certain religious denominations and other civic organizations.  The use of the building was also extended to veterans' organizations and their families, whenever those organizations held conventions in Brockton.  In the rear of the building there was an area in which the public were permitted to park automobiles free of charge.  The entire revenue of the taxpayer other than from donations was that derived from payments ("counter receipts") made for the use of the pool and billiard room, bowling alleys, showers and lockers, and for the purchase of cigars, cigarettes, cards, and candy, by its members and others using the premises. The counter receipts of the taxpayer during the years involved were $4,273.73 in 1941, $3,475.61 in 1942, and $3,-534.97 in 1943.  Donations received in those years amounted to $2,392 in 1941, $1,700.57 in 1942, and $4,550 in 1943. Operating expenses were $9,429.42 in 1941, $9,219.25 in 1942, and $8,675.77 in 1943.  The taxpayer was dependent upon the counter receipts and donations, its annual charity circus, and current borrowings to maintain and operate the property.  The taxpayer has no capital stock, and none of

its income is divided among its members. No profit was derived from the operation of the property.

The material conclusions reached by the board are as follows: "Although the purposes described in the corporation's certificate of incorporation are charitable, it is our opinion, that the use of the building by the various organizations described in the agreed facts, for meeting purposes and headquarters, and the maintenance and use of the pool and billiard room, the bowling alleys, showers and lockers, together with the counter sale of cigars, cigarettes, cards, candy and tonics, do not carry out the declared purposes of the corporation. Many of those organizations are not of a charitable, educational, religious or scientific character, while the use of the facilities afforded and the counter sales are either of a social or commercial nature. It is to be noted that the corporation receives a substantial income from the counter sales and use of the pool room and the other recreational activities. There is a failure of concurrence of ownership and occupancy of the property by the corporation such as is required so that it may be entitled to the exemption under G. L. (Ter. Ed.) c. 59, § 5, Third. . . . The corporation's land, used as a public parking space, is not devoted to charitable purposes. . . . No charitable purpose is served."

Appeals from decisions of the board to this court are only as to matters of law, and in the present cases the sole question of law is whether the conclusions of the board and the general findings for the assessors are warranted by the facts agreed and are not necessarily inconsistent therewith. *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 383–384. *Assessors of Boston* v. *Lamson*, 316 Mass. 166, 168. *Assessors of Boston* v. *Boston, Revere Beach & Lynn Railroad*, 319 Mass. 378, 379. See G. L. (Ter. Ed.) c. 58A, § 13.

It is conceded that the declared purposes set forth in the taxpayer's certificate of incorporation are charitable. But the fact that the purposes for which the taxpayer was incorporated would permit it to operate as a public charity is not enough. See *Hairenik Association, Inc.* v. *Boston,*

313 Mass. 274, 279. To obtain exemption of the property involved the burden is on the taxpayer to prove "that it is in fact so conducted that in actual operation it is a public charity." *Jacob's Pillow Dance Festival, Inc.* v. *Assessors of Becket,* 320 Mass. 311, 313, and cases cited. And it is established that the burden of proving that the real estate in question was exempt from taxation rests upon the taxpayer. *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston,* 294 Mass. 248, 257. *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378, 384. *Boston Chamber of Commerce* v. *Assessors of Boston,* 315 Mass. 712, 716. The property in question is owned by the taxpayer as required by the statute. The real issue is whether upon the agreed facts there was error in the conclusion of the board that the property in question was not occupied by the taxpayer for the purposes for which it was incorporated. *Assessors of Boston* v. *Lamson,* 316 Mass. 166, 168. The occupation of real estate by an institution which entitles it to exemption of such real estate is occupation directly for the charitable purposes for which it is incorporated. *Trustees of Phillips Academy* v. *Andover,* 175 Mass. 118, 123. *Hairenik Association, Inc.* v. *Boston,* 313 Mass. 274, 279. *Jacob's Pillow Dance Festival, Inc.* v. *Assessors of Becket,* 320 Mass. 311, 313, and cases cited. It is not enough that the taxpayer permits certain other charitable associations or corporations to use its property, however laudable or charitable their aims may be. *St. James Educational Institute* v. *Salem,* 153 Mass. 185, 187. It is the dominant use that is controlling. *Phi Beta Epsilon Corp.* v. *Boston,* 182 Mass. 457. The activities from which the counter receipts were derived were of a character usually designed for refreshment and amusement, and were consistent with similar activities that accompany the establishments of private social organizations or clubs rather than the dispensation of charitable relief. *Boston Lodge Order of Elks* v. *Boston,* 217 Mass. 176, 178, 179, and cases cited. Compare *Newton Centre Woman's Club* v. *Newton,* 258 Mass. 326, 329. The conclusion of the board that those activities did not carry out the declared purposes of the taxpayer was warranted by the agreed facts.

The fact that a corporation performs many charitable functions, of which the maintenance of a library to which the public may have access is admittedly one, does not render its real estate exempt from taxation, where the dominant use of the property is noncharitable.  So also, assuming without deciding that the free automobile parking space maintained by the taxpayer which the public could use might be said to be a charitable use, the agreed facts do not warrant a conclusion that that was a dominant use within the declared purposes of the taxpayer.  The fact that no profit was derived by the taxpayer from the operation of the property does not change the result.

We are of opinion that it cannot be said rightly as matter of law that the conclusions of the board and its general findings for the assessors are not warranted by the facts agreed or are necessarily inconsistent therewith.  The facts agreed support the conclusion of the board which is in substance that the dominant use and occupation of the property in question by the taxpayer was not for the declared charitable purposes for which it was incorporated, but was for fraternal and social purposes.

*Petitions for abatement dismissed.*