Meadowbrooke Day Care Center, Inc. v. Board of Assessors of Lowell.

MEADOWBROOKE DAY CARE CENTER, INC. *vs.* BOARD OF
ASSESSORS OF LOWELL.

Suffolk. January 6, 1978. — February 24, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Taxation,* Real estate tax: exemption, charity, day care center.

A decision of the Appellate Tax Board denying a corporation's application
for a real estate tax exemption under G. L. c. 59, § 5, Third, was re-
versed and remanded for further proceedings where the actual con-
duct of the corporation, according to the board's findings, appeared to
be consistent with the corporation's stated charitable purposes and
where it appeared that the board had proceeded on the erroneous view
that activities carried on by a private corporation, when taken over
and continued in substance by a charitable corporation, could not be
charitable in their character but must necessarily remain tainted as
noncharitable by reason of their previous sponsorship. [510-513]

APPEAL from a decision by the Appellate Tax Board.

*John E. Laursen* for the taxpayer.

*Thomas E. Sweeney,* Assistant City Solicitor, for the
Board of Assessors of Lowell.

KAPLAN, J. Meadowbrooke Day Care Center, Inc.
(Meadowbrooke), appeals to this court from a decision of
the Appellate Tax Board (board) affirming the denial by the
assessors of Lowell of an application for abatement of tax
for the first half of 1974 on real property owned and occu-
pied by Meadowbrooke. Meadowbrooke's contention, which
failed, was that the property was exempt from the tax under
G. L. c. 59, § 5, Third, as property of a "literary, benevo-
lent, charitable or scientific institution."

We find ourselves obliged on the present record to reverse
the board's decision and remand the case to the board for
further proceedings.

The petition to the board was under the formal procedure
(G. L. c. 58A, § 7) and a hearing was held. However a

transcript of the evidence given is not made available. We have before us "findings of fact and report" made by the board at Meadowbrooke's request accompanied by an "opinion" of the board (G. L. c. 58A, § 13), and we have also the exhibits introduced at the hearing.

We state the effect of the particular findings. The property comprised land with a two and one-half story brick building erected in 1970 at a cost of about $105,000, subject in 1974 to a mortgage reduced to approximately $90,000. Through 1973, a private corporation, Meadowbrook, Inc., as tenant had conducted a day care center on the premises.

On December 31, 1973, the property, subject to the mortgage, was conveyed by deed of gift to Meadowbrooke,[1] which was organized about that date as a charitable corporation under G. L. c. 180. The grantors were three persons who had served as officers of the corporation that had constructed the building. These persons became the initial trustees (and officers) of Meadowbrooke which, as examination of the exhibits indicates, had purposes, organizational structure, and by-laws appropriate for a c. 180 corporation. Meadowbrooke took over the activities of the day care center starting in 1974 and conducted them during the taxable period.

More particularly, the main purpose of Meadowbrooke as set forth in its articles of organization was "[t]o operate, maintain and conduct one or more day care centers for children of pre-primary school age and to provide child care services designed to meet community needs in the City of Lowell, Massachusetts, and surrounding communities." The by-laws vested management responsibility (exercisable through officers of the corporation) in the trustees to be designated from time to time by a class of voting members. Under the articles and by-laws neither earnings of the cor-

---

[1] Acceptance of the gift was, by vote of the trustees of Meadowbrooke, conditioned on the receipt of a ruling from the Internal Revenue Service that Meadowbrooke was a corporation exempt from income taxation as an organization described in I.R.C. § 501(c) (3), which was not a private foundation as defined in § 509. Such a ruling was obtained.

poration nor its assets on liquidation could inure to private benefit.

In early 1974 the center, with a physical capacity for 150 children, had an enrollment of twenty-five, ten full time and fifteen part time. The expenses for six children were paid by the welfare department; tuition was charged to the others, the usual rate being $40 a week but reduced where called for by family conditions. Income of the corporation consisted of these receipts. There was a working staff of four, two teachers, an assistant, and a clerk. Children were three to six years of age. The center ran from 7:30 A.M. to 5:30 P.M. and provided breakfast and lunch. The program included games and classes appropriate to the children's development.[2]

In its opinion the board stated, correctly, that the real property, to be exempt, not only must be owned by a corporation with charitable purposes, but must be actually occupied by the corporation for such purposes. See *Milton Hosp. & Convalescent Home* v. *Assessors of Milton,* 360 Mass. 63, 67 (1971); *Jacob's Pillow Dance Festival, Inc.* v. *Assessors of Becket,* 320 Mass. 311, 313 (1946). In its findings and report the board wrote that "[t]he stated corporate purposes — to provide child-care services designed to meet community needs — are undoubtedly charitable." But the opinion noted "doubt" whether Meadowbrooke had met the second requirement. The basis for the doubt was expressed in the findings and report thus: "The board is not persuaded that the last toll of the New Year's bell transmuted a private business into a public charity or worked more than a change of form in the operations of the appellant."

We hold for two reasons that there is not adequate support for a conclusion denying tax exemption. First. The actual conduct of the center in 1974 as we have described it above, drawing on the board's findings, appears to have

---

[2] A letter dated in January, 1976, from the superintendent of Lowell public schools records a vote of the school committee stating that it approved the center as a nursery school.

been quite in keeping with the corporation's stated charitable purposes. *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378 (1937). If there were further elements in the conduct of the center that were inconsistent with and pulled against those purposes, they have not been described. Such features may be hinted at in the quoted passage about the "transmutation" of the predecessor corporation, but innuendo is not enough. (See *Cummington School of the Arts, Inc.* v. *Assessors of Cummington*, 373 Mass. 597, 602 [1977], where we criticized a set of board "findings of fact and report" for its "tone of a disbelieving, biased advocate rather than that of a dispassionate arbiter of the issues of fact and law argued before it.") Thus we are left with a definite gap in the findings, or rather a discrepancy between the particular findings and the board's result, which cannot be filled or glossed over by the formulaic statement by the board, added as a matter of course in cases reaching a negative conclusion, that "insofar as it is a question of fact, the board finds that the appellant is not a charitable corporation as that term is used in the exemption statute." [3] The fault here is more glaring than a failure of reported evidence to support particular findings which are themselves consistent with the board's result. *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth*, 368 Mass. 745 (1975). Second. It appears that the board may well have been proceeding on an erroneous view of the law, namely, that activities carried on by a private corporation, when taken over and continued in substance by a corporation qualifying by its purposes and structure as a charitable corporation, cannot be charitable in their character but must necessarily remain tainted as noncharitable by reason of their previous sponsorship — at least for some period of time. This is by no means a necessary or invariable proposition, as shown by the discussion in *Fisher School* v. *Assessors*

---

[3] Thus the board is not helped by the suggestion that a general or conclusory finding can import a finding of all facts necessary to support it which are *consistent* with the specific facts actually found. See *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 383 (1937).

*of Boston,* 325 Mass. 529, 531, 534-535 (1950), where there was a transfer of assets from a private corporation to a corporation organized as a charity.[4]

We emphasize that the present opinion marks no departure from the well established rule that a party claiming exemption from tax as a charity bears a grave burden of proving the claim. See *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston,* 294 Mass. 248, 257 (1936). We do not derogate from the credit ordinarily attaching to findings made by the board on a proper record (see *First Data Corp.* v. *State Tax Comm'n,* 371 Mass. 444, 446 [1976]), nor do we recede from what we have said about the difficulties a taxpayer ordinarily encounters in attempting to upset findings of the board when the record does not bring the underlying evidence before us. See *Coomey* v. *Assessors of Sandwich,* 367 Mass. 836, 839-840 (1975). Cf. *Assessors of Kingston* v. *Sgarzi,* 367 Mass. 840 (1975). We add that we are not to be taken as anticipating a favorable or unfavorable disposition of Meadowbrooke's claim. Whether or to what extent Meadowbrooke can establish a right to exemption (cf. *Milton Hosp. & Convalescent Home* v. *Assessors of Milton,* 360 Mass. 63, 70 [1971]) will turn on the findings arising from evidence in the "gap" area either already presented to the board or to be offered to it on remand. At argument in this court, counsel on both sides indeed indicated the desirability of enlarging the record before the board so that a satisfactory reasoned decision coud be reached on all the relevant facts.

The decision of the Appellate Tax Board is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[4] The board's brief makes a sliding reference to the possibility that the year-end transactions were made with the design of bolstering the financial situation of the center by securing a tax exemption on the footing of a charity. We do not think such a purpose would defeat the exemption if otherwise warranted.