LYNN HOSPITAL *vs.* BOARD OF ASSESSORS OF LYNN.

Suffolk.  November 6, 1980. — February 18, 1981.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Taxation,* Real estate tax:  exemption, charity, hospital.

A hospital was not exempt from local property taxes under G. L. c. 59,
    § 5, Third, on those portions of its parking garage which it reserved
    for use by private physicians occupying offices in an adjacent medical
    building and which were used by the general public even though the
    dominant use of the garage was for hospital related purposes.
    [17-20]

A hospital was not exempt from local property taxes under G. L. c. 59,
    § 5, Third, for fiscal year 1976 on those portions of its parking garage
    which it reserved for use by private physicians occupying offices in an
    adjacent medical building and which were used by the general public,
    even though on January 1, 1975, the date of assessment for fiscal year
    1976, the garage was available for use but construction of the medical
    building had not been completed where, by a deed recorded Janu-
    ary 11, 1974, the hospital had covenanted to reserve parking spaces for
    use by physicians in the medical building, where the physicians used
    the parking garage during 1975 and 1976, and where the garage had
    been available for use by the general public since its completion.
    [20-21]

Where a finding by the Appellate Tax Board that the use of a parking ga-
    rage owned by a hospital was divided equally between tax exempt and
    nonexempt purposes was based on mutually inconsistent findings of
    fact, the case was remanded to the board for a clear statement of rea-
    sons supporting its finding as to the proportionate exemption to which
    the hospital was entitled under G. L. c. 59, § 5, Third.  [21-23]

APPEAL from a decision by the Appellate Tax Board.

*Robert E. Brooks* for Lynn Hospital.

*John D. Barry,* City Solicitor, for Board of Assessors of
Lynn.

QUIRICO, J.  This appeal by the Lynn Hospital (hospital)
from a decision of the Appellate Tax Board (board) brings
here three questions regarding the amount of tax abate-

ments to which the hospital is entitled under G. L. c. 59, § 5, Third, for fiscal years 1976 and 1977 on a parking garage owned by it. The Board of Assessors of Lynn (board of assessors) in both years denied the hospital's applications for abatements. The hospital appealed both decisions to the board as provided for by G. L. c. 59, §§ 64 and 65.[1] The board, after a hearing, ordered abatements for both years but in amounts less than were sought by the hospital. The hospital took its appeal to this court as permitted by G. L. c. 58A, § 13. We affirm the decision of the board in so far as it held this garage taxable in part, but remand because the proportionate exemption ordered by the board rests on conflicting findings of fact.

We summarize the facts as stated in a statement of agreed facts and as found by the board. Where necessary, we supplement these findings by reference to the record. The property that is the subject of this appeal consists of a 500 vehicle, multi-level parking garage constructed on 45,253 square feet of land at 215 Boston Street in Lynn. This property is located adjacent to and serves both the hospital and the Lynn Hospital Medical Building (medical building), which is owned by a partnership composed exclusively of doctors on the staff of the hospital and is used by these doctors to conduct their private practices. At all times relevant to this action, the hospital has been a duly organized charitable organization for purposes of the tax exemption granted by G. L. c. 59, § 5, Third.[2] The medical building does not so qualify.

---

[1] The hospital on both occasions chose to proceed under an informal procedure. See G. L. c. 58A, § 7A. The board of assessors elected to have the 1977 appeal heard under the formal procedure. *Id.* The board consolidated the two cases prior to the hearing. See G. L. c. 58A, § 8.

[2] Pursuant to G. L. c. 59, § 5, Third, as amended by St. 1977, c. 992, § 2, the following property is exempt from taxation: "real estate owned by . . . a charitable organization and occupied by it or its officers for the purposes for which it is organized or by another charitable organization or organizations or its or their officers for the purposes of such other charitable organization or organizations."

Before the construction of this parking garage, the hospital relied primarily on a parking lot with space for about 300 vehicles. For at least three years prior to fiscal year 1976, this lot was regarded by the city as tax exempt. In 1972, it became clear to the hospital that its parking facilities were inadequate, and it commissioned an independent study of its existing and prospective needs. This study concluded with the recommendation that the hospital construct on the site of the parking lot then in use a garage to accommodate 500 vehicles. After obtaining the necessary rezoning, the hospital constructed such a garage on the site of its previous parking lot. The garage was placed in use in the fall of 1974.[3]

The medical building was also under construction in 1974. By a quitclaim deed recorded January 11, 1974, the hospital deeded to the partnership which now owns the medical building the land on which the building stands. The hospital covenanted by this deed to reserve at a standard charge six spaces in the completed garage for each physician who joined the partnership. The medical building was first occupied in February or March of 1975.

Since its completion, the garage has been operated on a contract basis by an independent firm. Hospital personnel purchase parking privileges at a reduced rate through a system of payroll deduction. Others, including the general public, are permitted to use the parking garage for a cash fee. In 1975, the garage operation resulted in a loss to the hospital in excess of $100,000.

As of January 1, 1975, the date of assessment for fiscal 1976, the board of assessors valued the garage at $250,000. As of January 1, 1976, the garage was assessed at a value of $500,000.[4] In both years, local property taxes were com-

---

[3] The parties agreed that the garage was open for use in 1974. The board made conflicting findings on this point; its reported findings state first that the garage was open in 1974, and later that it was open in March, 1975. We attach no particular importance to this apparent confusion in the board's findings.

[4] According to the testimony of the member of the board of assessors responsible for the 1975 assessment, the value was reached on the assump-

puted and billed to the hospital on the basis of these assessed values. In both years the hospital duly appealed to the tax board, claiming that the facility qualified for a full exemption from taxation. The consolidated appeals were heard by the board on January 10 and February 2, 1978. In a written decision including findings of fact and a formal opinion, the board found that, for each of the two years in question, the garage was 50% exempt from local property taxes under G. L. c. 59, § 5, Third, and ordered abatements accordingly.

The hospital challenges the board's action on three grounds. Most broadly, it argues that because the "dominant purpose" for which the garage is used is charitable, it should be held fully exempt from local property taxation. Next, it argues that because on January 1, 1975, the use of the garage was exclusively in the hospital, the board erred in not holding the facility fully exempt from taxation for fiscal year 1976. Finally, the hospital challenges the proportionate exemption ordered by the board on the ground that it is not supported by substantial evidence. We agree with the board that, as to both years in question, it was proper to calculate the hospital's exemption from local property tax on a proportionate basis. We conclude, however, that the board's findings do not support the order of abatement which was entered.

1. *Full exemption.* The hospital argues on this appeal, as it did throughout the proceedings below, that because the dominant use of the garage is for hospital related purposes, it is fully exempt from local property taxes under G. L. c. 59, § 5, Third. The hospital does not dispute that there is some nonexempt use of the garage. However, it characterizes such use as "incidental," and suggests that it is minimal in relation to the hospital's "controlling" use. In support of this position, the hospital points out that con-

tion that the use of the garage would be equally divided between the hospital and the medical building. No explanation appears on the record for the increase in assessed value as of January 1, 1976.

struction of the garage was undertaken to remedy an existing parking shortage; that the medical building, coupled with present parking facilities, enables the hospital to attract and retain a highly competent staff; and that the hospital derives a direct benefit from the proximity of the garage and medical building in the form of increased availability of medical personnel and facilities for patient care.

Assuming that these benefits exist, we nevertheless agree with the board that they are insufficient to establish the hospital's entitlement to a full exemption from property tax on the garage. In *Milton Hosp. & Convalescent Home* v. *Assessors of Milton,* 360 Mass. 63 (1971), we dealt with a similar claim of exemption with respect to office space leased by the exempt taxpayer to doctors on its staff for the purpose of conducting their private practices. We rejected the view that because this leasing arrangement benefited the hospital in terms of physician availability and proximity, the taxpayer was thereby entitled to an exemption from property taxes assessed on the leased portion of its facility. "The physicians occupy their offices to conduct their private professional practices for their own personal income. The hospital is not incorporated for the purpose of engaging in the practice of medicine for profit, and if it were it would not be a 'charitable organization' under the statute. As to real estate which a charitable organization both owns and occupies it is not entitled to tax exemption if the property is occupied by it for a purpose other than that for which it is organized." *Id.* at 69, citing *Brockton Knights of Columbus Bldg. Ass'n* v. *Assessors of Brockton,* 321 Mass. 110, 113-114 (1947); *Hairenik Ass'n* v. *Boston,* 313 Mass. 274, 279-280 (1943); *Animal Rescue League* v. *Assessors of Bourne,* 310 Mass. 330, 337 (1941). The fact that no profit was derived from the leasing arrangement did not alter our analysis. *Milton Hosp., supra* at 69-70. The rule of proportionate exemption stated in *Milton Hosp., supra,* is now recognized as generally applicable in this State. See *Meadowbrooke Day Care Center, Inc.* v. *Assessors of Lowell,* 374 Mass. 509, 511 (1978); *Blue Hill Cemetery, Inc.*

v. *Assessors of Braintree*, 2 Mass. App. Ct. 602, 606 (1974). See generally Semerjian, Real Estate Tax Abatement Procedure in Massachusetts, 61 Mass. L.Q. 199, 200 (1977).

The several cases from other jurisdictions cited by the hospital give us no cause to question the conclusion that the board properly sought to apportion the exemption claimed here on the basis of exempt and nonexempt use. We note first that we evaluate the weight of such precedents in the context of the disparate statutory and constitutional provisions governing property tax exemptions for charitable institutions in the various States. See Annot., 33 A.L.R. 3d 938, 942 (1970) ("Since exemptions from taxation of property used for charitable, educational, or hospital purposes are based on legislative enactments, and the particular language used is the yardstick against which counsel must measure the facts of his case, counsel must study the wording of the applicable laws"). Passing that hurdle, we note that in each of the cases cited by the hospital, there were express findings that the use of the parking facilities in question was limited to purposes directly related to the charitable purposes of the taxpayer. See *Maine Medical Center* v. *Lucci*, 317 A.2d 1, 2 (Me. 1974); *Mark H. Wentworth Home* v. *Portsmouth*, 108 N.H. 514, 517 (1968); *Bowers* v. *Akron City Hosp.*, 16 Ohio St. 2d 94, 95 (1968); *University Circle Dev. Foundation* v. *Perk*, 32 Ohio Op. 2d 213, 215 (Cuyahoga County App. 1964); *Ellis Hospital* v. *Fredette*, 27 App. Div. 2d 390, 391 (N.Y. 1967). Moreover, we note that a later case from New Hampshire expressly adopts a rule of proportionate exemption similar to that employed in *Milton Hosp. & Convalescent Home* v. *Assessors of Milton*, *supra*. See *St. Paul's School* v. *Concord*, 117 N.H. 243, 257 (1977) ("The tax status of . . . parking lots should be determined according to the status of the buildings which they serve. Where a building is partially taxed, or where one or more buildings served are taxed, a proportionate value of the parking lot should also be taxed").

These cases thus confirm our opinion that the tax exemption sought here is permissible only to the extent that the

property was in actual use for charitable purposes during the tax years in question.

2. *Exemption for fiscal 1976.* The hospital's more limited claim is that the board erred in not granting a total abatement of the property tax imposed for fiscal 1976. The basis for this claim is that as of January 1, 1975, the date of assessment for fiscal year 1976, the garage was available for use, but completion of the medical building was still two or three months in the future. Asserting that the actual use of the facility on the date of assessment is controlling under G. L. c. 59, the hospital argues that the board could not have found that use of the garage on that date was other than exclusively in the hospital.

It is true that our statutory date of assessment is the first of January preceding the tax year in question. See G. L. c. 59, § 21. "The rule which flows from this is settled: 'It is the use of the property at the time when the tax is assessed which determines whether it is exempt from taxation or not.' *Trustees of Amherst College* v. *Assessors of Amherst,* 193 Mass. 168, 178 (1906). The exemption provided in G. L. c. 59, § 5, Third, is available, therefore, if a charitable organization owns real estate and occupies it for its corporate purpose, or allows another charitable organization to occupy it for its purpose, on January 1. *Animal Rescue League of Boston* v. *Assessors of Bourne,* 310 Mass. 330, 332 (1941). *Milton Hosp. & Convalescent Home* v. *Assessors of Milton,* 360 Mass. 63, 67 (1971)." *Assessors of Hamilton* v. *Iron Rail Fund of Girls Clubs of America, Inc.,* 367 Mass. 301, 306 (1975).

In this case, the board found that the medical building was not open or in use until February or March of 1975. This was not the extent of the evidence on the question, however. By a deed recorded January 11, 1974, the hospital covenanted with the partnership which owns the medical building to "reserve six (6) parking spaces at the standard charge per space for each physician who is a partner . . . from time to time. Said parking spaces shall be located in a parking garage . . . ." As of January 1, 1975, the part-

nership included approximately twenty physicians. In addition, evidence presented by the hospital indicated that the garage has been available since its completion to the general public for parking on an hourly cash fee basis.

We think these facts provide a sufficient basis for the conclusion that during fiscal year 1976, the garage was in use for both exempt and nonexempt purposes. It is settled that the real estate of a charitable institution generally ceases to qualify for the tax exemption granted by G. L. c. 59, § 5, Third, once it is leased to a nonexempt lessee. See *Milton Hosp. & Convalescent Home* v. *Assessors of Milton, supra* at 67-68; *Worcester Masonic Charity & Educ. Ass'n* v. *Assessors of Worcester*, 326 Mass. 409, 411-412 (1950); *Charlesbank Homes* v. *Boston*, 218 Mass. 14, 17 (1914). The application of this rule should not be made to depend on whether the lessee happens to exercise his property right on the day of assessment. The hospital does not deny that the medical building partnership made use of the parking garage during 1975 and 1976, nor does it deny that the parking lot was used by the general public during these years for purposes unrelated to the charitable purposes of the hospital. In these circumstances, the board's finding that the garage was only partially exempt from taxation during fiscal year 1976 must stand.

3. *Finding as to the percentage of exemption.* We reach finally the question whether the evidence before the board warranted a finding that the use of the parking garage was divided equally between exempt and nonexempt purposes during the tax years in question.[5] It is established that the findings of the board are final if supported by substantial evidence. *Cummington School of the Arts, Inc.* v. *Assessors of Cummington*, 373 Mass. 597, 600 n.3 (1977). *United Church of Religious Science* v. *Assessors of Attleboro*, 372

---

[5] The hospital has met the three prerequisites for our consideration of this question. The issue of proportionate exemption was raised before the board, the board made specific findings as to that issue, and the record contains the evidence necessary for our consideration of the issue. See *Vespa* v. *State Tax Comm'n*, 373 Mass. 857, 858 (1977), and cases cited.

Mass. 280, 281 (1977). *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth,* 368 Mass. 745, 749 (1975). *Children's Hosp. Medical Center* v. *Assessors of Boston,* 353 Mass. 35, 39 (1967). "Substantial evidence means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pequot Assocs.* v. *Assessors of Salem,* 376 Mass. 270, 274 (1978), quoting from G. L. c. 30A, § 1(6), inserted by St. 1954, c. 681, § 1. While this standard does not lend itself to precise formulation, it requires at a minimum that the board's findings of fact not be mutually inconsistent. *Assessors of Hamilton* v. *Iron Rail Fund of Girls Clubs of America, Inc.,* 367 Mass. 301, 302 (1975).

Here, there was oral testimony to the effect that users of the parking garage divided equally between the hospital and the medical building. One member of the board of assessors testified that he had parked near the garage on six or seven occasions, each of about a half hour, to observe where its patrons went after parking. His estimate that about fifty per cent went to the hospital was accepted by the board. A constable for the city testified to similar observations made on two days immediately prior to the hearing, and the board appears to have based its findings in part on this testimony as well.

The testimony of the hospital's controller directly contradicted these estimates. Taking as his basis records of garage use kept during 1975 and 1976, he testified that of the roughly 600 cars a day which used the garage, 540 were necessarily driven by hospital personnel. This figure was based on a comparison of cash receipts at the garage with the use of parking passes available only to persons associated with the hospital.

It was, of course, open to the board to accept the former evidence and reject the latter.[6] Here, however, the board made no such choice. Both estimates as to use are incorpo-

---

[6] Without implying any ruling on the question, we note the questionable relevance of testimony as to use of the facility in 1978 when the issue to be resolved regards its use in 1975 and 1976.

rated, essentially verbatim, into the board's findings of fact.[7] Nor is it any explanation to say that the board was merely reporting the evidence. "The board's statutory 'findings of fact and report' (G. L. c. 58A, § 13) should separate actual findings from any discussion of the evidence so that appellate review may be had on a clear statement of the reasons for the board's action." *Cummington School of the Arts, Inc.* v. *Assessors of Cummington, supra* at 601 n.4. Because the board's findings as to the actual use of the garage are mutually inconsistent, we remand this case to the board for a clear statement of the reasons supporting its finding as to the proportionate exemption to which the hospital is entitled.

*So ordered.*

---

[7] The tax board first summarized the testimony of the hospital's controller as follows: "In 1975 and 1976, about 217,000 cars or approximately 600 cars per day used the garage. Each day, on an average, there were about 400 key-card users, about 120 coupon users and about 20 volunteer users. The other sixty people were patients going to the medical building, hospital visitors or persons living in the neighborhood. Receipts in 1975 from persons paying cash were $1540." It was not disputed, and the board expressly found, that key card and coupon users are necessarily hospital personnel.

Despite this evidence, the board concluded its formal findings of fact as follows: "A member of the Board of Assessors observed the patronage flow of the garage on occasions in October and November of 1975. The users of the facility divided equally between the hospital and the medical building. A constable, employed by the City of Lynn, tabulated the destination of the garage patrons on two days in 1978. On January 6, in the morning, eight persons parking in the garage went to the hospital, fourteen to the medical building. In the afternoon, sixteen went to the hospital and seventeen to the medical building. On January 9, the division was seven to the hospital and eleven to the medical building. This latter count was based on an afternoon check.

"Based upon the foregoing evidence, the Board finds that the use of the garage was equally divided between hospital personnel and patients going to the nearby medical building."