ST. MARY'S MEDICAL CENTER OF
EVANSVILLE, INC., St. Mary's
Building Corporation, Petitioners,

v.

STATE OF INDIANA BOARD OF TAX
COMMISSIONERS and County Board
of Review for Vanderburgh County, Re-
spondents.

Nos. 82T05–8706–TA–00025,
82T05–8801–TA–00001.

Tax Court of Indiana.

Jan. 27, 1989.

Harry P. Dees, G. Michael Schopmeyer,
Kahn, Dees, Donovan & Kahn, Evansville,
for petitioners.

Linley E. Pearson, Atty. Gen. by Joel
Schiff, Deputy Atty. Gen., Indianapolis, for
respondents.

## STATEMENT OF THE CASE

FISHER, Judge.

Petitioners, St. Mary's Medical Center of
Evansville, Inc. (St. Mary's) and St. Mary's
Building Corporation, sought property tax
exemptions for three parcels of property
for the years 1984 through 1987. The Re-
spondent, State Board of Tax Commission-
ers, found these properties to be 100% tax-
able for the years in question. The proper-
ties in question are: the Shenandoah Medi-
cal Building; the Medical Arts Building;
and the St. Mary's Medical Office Building,
which also claims exemption for the addi-
tional year of 1983.

The court, having admitted and reviewed
the evidence, makes the following findings
of fact:

1. The Shenandoah Medical Building is
owned by St. Mary's and is a two-story
building used directly by St. Mary's hospi-
tal or leased predominantly to physicians
and medical service persons on St. Mary's
medical staff.

2. The Medical Arts Building is owned
by St. Mary's Building Corporation and is a
two-story office building used directly by
St. Mary's or leased predominantly to phy-
sicians and medical service persons on St.
Mary's medical staff.

3. St. Mary's Medical Office Building is
a five-story building owned by St. Mary's
Building Corporation with offices used di-

rectly by St. Mary's or leased predominantly to physicians and medical service persons on St. Mary's medical staff.

4. St. Mary's Building Corporation operates and holds title solely for St. Mary's. It is a not-for-profit entity whose income and earnings go to St. Mary's.

5. St. Mary's is a not-for-profit entity qualified under Internal Revenue Code Section 501(c)(3) and is organized for educational, religious, scientific and charitable purposes.

6. None of the income or earnings of either St. Mary's Building Corporation or St. Mary's inure to the benefit of any private shareholders.

7. Applications for property tax exemption were duly filed by St. Mary's covering the Medical Office Building for tax years 1975 through 1982, and none of the applications were fully denied by either the county or State Board.

8. Beginning with the 1983 tax year, the applications were fully denied for the Medical Office Building.

9. Beginning with the 1984 tax year, St. Mary's filed applications for property tax exemption for the other two office buildings along with the exemption filed for the Medical Office Building. All exemptions were fully denied.

10. All of the properties in question are located on property contiguous to and adjoining the St. Mary's hospital campus.

11. Except for the leasing of premises in the subject office buildings for snack shops or pharmacies, leases are extended only to persons or entities associated with the St. Mary's hospital.

## DISCUSSION AND OPINION

■ IC 6-1.1-10-16 provides that property which is "owned, occupied, and used by a person for educational, literary, scientific, religious, or charitable purposes" is exempt from property tax. The issue of ownership is not in dispute in the case at bar. However, "use" and "occupancy" is questioned.

In *LeSea Broadcasting Corp. v. State Board of Tax Commissioners* (1988), Ind.

Tax, 525 N.E.2d 637, this court established the standard to be applied to IC 6-1.1-10-16. The issue in *LeSea* was whether or not property owned and occupied by LeSea was used predominantly for religious purposes. The court concluded that the standard to be applied is "whether LeSea's apartments are reasonably necessary for the maintenance of its religious purpose." *Id.* at 639. The court did not conclude that the apartments were or were not entitled to exemption. The case was remanded to the State Board for that determination.

According to the standard established in *LeSea*, the determination of whether or not the petitioners are entitled to property tax exemptions should be based on whether the medical office buildings are reasonably necessary for the maintenance of St. Mary's religious, educational or charitable purposes. Petitioners contend that any portions of the petitioners' properties leased to doctors, dentists, and others are used and occupied in a manner substantially related to the petitioners' exempt purposes and, therefore, pursuant to IC 6-1.1-10-36.3, the petitioners' properties are exclusively or predominantly used and occupied in furtherance of its exempt purposes. Petitioners cite *Hotel Dieu v. Williams* (1982), La., 410 So.2d 1111, in support of this contention. In *Hotel Dieu*, the applicable Louisiana constitutional provision exempts:

"[p]roperty owned by a nonprofit corporation or association organized and operated exclusively for religious ... charitable, health ... or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or member thereof and which is declared to be exempt from federal or state income tax." *Id.* at 1111 (quoting Louisiana Constitution of 1974, Art. 7, § 21(B)(1)).

The Louisiana Supreme Court granted exemptions for an office building and garage adjacent to Hotel Dieu Hospital. The office building and garage were located on land owned by Hotel Dieu Hospital, a nonprofit corporation, and the structures were owned by Seton Professional Building, Inc., a nonprofit corporation organized for charitable purposes. Profits made by Seton

went to Hotel Dieu for hospital activities including treatment of the indigent. The Seton corporation was an alter ego of the hospital. Both Seton and the hospital were exempted from federal and state income taxes. All of the individual physicians in the building were members of the medical staff at Hotel Dieu Hospital and they sent all or a substantial number of their patients to Hotel Dieu. A restaurant was the only nonmedical tenant. The parking garage was open to the public but its customers were primarily those who had business at the hospital or the office building. The Louisiana court noted that a nonprofit corporation could retain its exemption even though it engaged in some commercial activities if the activities were somehow related to the exempt purposes of the nonprofit corporation. The Louisiana court concluded that one factor in determining exemption is location of the commercial activity. If it is an adjoining facility, then it is more likely to be related to the exempt purposes of the owners. The court, therefore, held that the adjacent office building and garage were related to the exempt purposes of the hospital.

Although the facts of *Hotel Dieu* are similar to the case at bar, the standard established for exemption in Louisiana is more lenient than the standard established in Indiana. This court must look to more than mere ownership and location of the properties in question. This court must consider ownership, occupancy, and use of the properties. The properties must be reasonably necessary for the maintenance of, and not just related to, the exempt purposes of the hospital.

In *White Cross Hospital Association v. Board of Tax Appeals* (1974), 38 Ohio St.2d 199, 311 N.E.2d 862, petitioner's medical office building, located near the hospital, provided office space for hospital staff members to conduct their private practices. The applicable Ohio statute allowed property tax exemption for:

> Real property and tangible personal property *belonging to* a charitable or educational institution or to the state or a political subdivision ... if it is either:
> ... (B) Otherwise made available under

the direction or control of such institution, the state, or political subdivision *for use in furtherance of or incidental to its charitable, educational, or public purposes* and not with the view to profit. *Id.* at 864 (quoting R.C. 5709.121, 133 Ohio Laws, Pt. III, 2646) (emphasis added).

The determinative factors in this Ohio statute are ownership and use of the property. The Ohio Supreme Court held that under this statute the medical office building was not entitled to exemption. "The rationale justifying a tax exemption is that there is a present benefit to the general public from the operation of the charitable institution sufficient to justify the loss of tax revenue." *Id.* at 863. The Board of Tax Appeals determined that the building was used as a place "in which the tenant physician conducts and furthers his own private practice, paying competitive rental therefore." *Id.* Thus, the Ohio Supreme Court determined that it could not conclude "that the operation of a medical office building by a nonprofit charitable hospital for the convenience of the private practice of its staff members is either 'in furtherance of or incidental to its charitable, educational, or public purposes' even in the absence of a profit." *Id.* at 864. In a concurring opinion, Justice Stern stated:

> Equally clear is that the convenient proximity of the office building to the hospital improves and facilitates patient care, and thereby furthers appellant's primary *raison d'etre*. Yet, the improved patient care is the immediate result, not of the *use* to which the medical facility is put but of the *physical location* of the building. Move the office building down the road two miles and a serious question arises, even under the most liberal statutory construction, as to whether it would then significantly further, or be incidental to the operation of appellant's hospital.

*Id.* at 865 (emphasis supplied).

The Ohio Supreme Court's opinion in *White Cross* is aidant to the case at bar even though the "'in furtherance of or inci-

dental to" standard is not identical to a "reasonably necessary" standard. This court finds convincing the Ohio Supreme Court's examination of the use to which the office building was put and whether such use was a benefit to the general public. These are significant factors which must be considered. Petitioners in the case at bar assert that the medical office buildings are an integral part of their hospital. Petitioners also suggest that the close proximity of the office buildings to the hospital greatly enhances the level of care for the hospital's patients. There is no doubt that such a location is convenient for the dentists and doctors. However, in order to reach the conclusion that the office buildings are reasonably necessary for the maintenance of St. Mary's charitable purposes the resulting benefit from the use of the buildings must inure to the public.

Petitioners correctly point out that dormitories have been recognized by Indiana courts as necessary to the educational purpose of charitable colleges. *See Indiana State Bd. of Tax Comm'rs v. International Business College, Inc.* (1969), 145 Ind. App. 353, 251 N.E.2d 39. Petitioners assert that nearby medical office space for the hospital staff is no less important to the furtherance of its objectives than is a dormitory to any school. However, dormitories are not established in order to enable its tenants to further their own commercial activities.

The court finds persuasive the reasoning of the Massachusetts Supreme Court in the case of *Milton Hospital and Convalescent Home v. Board of Assessors of Milton* (1971), 360 Mass. 63, 271 N.E.2d 745. In this case, the appropriate statute exempts from taxation "the real estate owned by or held in trust for a charitable organization and occupied by it or its officers for the purpose for which it is organized." *Id.* 271 N.E.2d at 746. Similar to the Indiana statute, the Massachusetts statute provides for ownership, occupancy, and use as the determining factors for exemption.

The hospital in *Milton* was a charitable organization within the meaning of the Massachusetts statute. A new hospital wing was designed to include offices to be rented to staff physicians. The new wing also included space for the visiting nurses association, the Red Cross, and for hospital records and activities. The rent charged by the hospital for the physicians' offices was roughly equivalent to that charged for similar space in commercial office buildings in comparable locations in the town. The physicians were permitted, without any supervision, control, or limitation by the hospital, to charge patients for professional services whatever sum they determined. The leases transferred complete possession and enjoyment of the leased offices to the lessee-physicians who used and occupied the offices for the treatment of their own private patients.

The Massachusetts Supreme Court, while discussing the standard by which it would review the exemption statute, noted that because an exemption releases property from the obligation of bearing its share of the cost of government and serves to disturb the equality and distribution of the common burden of government upon all property, an exemption from taxation is strictly construed. This is also the law in Indiana. *See State Bd. of Tax Comm'rs v. Wright* (1966), 139 Ind.App. 370, 215 N.E.2d 57.

The Massachusetts court went on to conclude that the mere fact the real estate in question was owned by a charitable organization did not exempt it from taxation. More was required. "Concurrence of ownership of corporate property of the charitable institution and occupancy by it for its corporate purposes is required for an exemption from taxation...." *Id.* 271 N.E.2d at 748.

In *Milton,* the court held that occupancy of the suites by the physicians as lessees of the hospital was not occupancy by the hospital or any of its officers. The court noted that the physicians occupied their offices to conduct their private and professional practices for their own personal income. The hospital was not incorporated for the purpose of engaging in the practice of medicine for profit. Unquestionably, the hospital acted in its best interest by leasing to

the physicians on its staff and, likewise, it was not motivated by any desire to realize a financial profit. However, that did not change the fact that the occupancy and use of the property by the physicians for the conduct of their private medical practices for profit was significantly different from the use and occupancy by the hospital for the charitable purposes for which it was organized.

The facts in the case at bar are strikingly similar to the facts in *Milton*. The court adopts the rationale of *Milton*. St. Mary's is not organized for the purpose of engaging in the practice of medicine for profit, and the determination of the State Board that medical buildings do not fall within the parameters of the exemption provided by IC 6–1.1–10–16 is supported by substantial evidence and is neither contrary to law nor an abuse of discretion.

■ Petitioners also assert that the rule of strict construction has been held inapplicable to the interpretation of property tax exemption statutes. Petitioners interpret *Butler University v. State Board of Tax Commissioners* (1980), Ind.App., 408 N.E. 2d 1286, as holding the rule of strict construction inapplicable to statutes granting property tax exemptions to educational institutions. Petitioners assert that *Butler's* applicability to St. Mary's cannot be questioned. The court finds *Butler's* applicability to this case to be very much in question. Butler University's claim for exemption rested upon a charter incorporated into an act passed by the legislature in 1850. Butler possessed a contractual right pursuant to the special Act which could not be superseded by IC 6–1.1–10–16. The court in *Butler* did not hold, as Petitioners suggest, that statutes granting property tax exemptions to educational institutions are to be liberally construed. On the contrary, the court held that the rule of strict construction could not be applied to Butler's situation since the legislature specifically stated within Butler's own charter that the charter was to be liberally construed. "[T]he burden is upon the one claiming the exemption to show that the property clearly falls within the exemption statute." *Indiana*

*Ass'n of Seventh–Day Adventists v. State Bd. of Tax Comm'rs* (1987), Ind.Tax, 512 N.E.2d 936.

■ Petitioners further assert that even if the buildings do not fall within the exemption statute, the Medical Office Building is exempt under the doctrine of legislative acquiescence. The applicability of legislative acquiescence to cases such as this one is seriously in doubt after the Indiana Supreme Court's decision in *Indiana State Board of Tax Commissioners v. Fraternal Order of Eagles Lodge No. 255* (1988), Ind., 521 N.E.2d 678.

In *Eagles*, the Eagles Lodge No. 255 applied for, and received, a property tax exemption for ten years prior to 1983. Then in 1983, the Lodge's application for property tax exemption was denied by the State Board. The State Board found that the buildings and property were not being used predominantly for charitable purposes. After a lengthy discussion on legislative acquiescence, the Indiana Supreme Court concluded that the doctrine should not be applied. The Lodge clearly did not fall within the exemption statute. The court stated that "[t]he wording of the statute clearly did not apply to appellee's situation. The taxing authorities simply were not following the statute in that instance." *Id.* at 681. There was no action left for the legislature to take.

According to the Indiana Supreme Court, the doctrine of legislative acquiescence is applied generally where there has been an administrative interpretation of ambiguous statutory language. *Id.* at 681. The Indiana Supreme Court finds "legislative acquiescence when the legislature is apprised of the interpretation of the ambiguous language and does nothing." *Id.* Petitioners assert that *Eagles* can be distinguished from the case at bar because the Eagles Lodge property clearly did not fall within the statute and the Medical Office Building arguably does fall within the ambiguous language used in the statute. However, the court cannot conclude that "owned, occupied, and used" is ambiguous statutory language. It is difficult to see how the legislature could be less "ambigu-

ous" unless they specifically state that medical office buildings are or are not exempt from property taxes.

Furthermore, it is not clear that the legislature was apprised of the interpretation of IC 6–1.1–10–16 one way or the other. Petitioners allege that the evidence of St. Mary's property cards of record establishes the existence of an agreement between St. Mary's and the local assessing officials with regards to granting exempt status to the Medical Office Building. Apparently, the property record cards show that the assessed value of St. Mary's real property was revised in recognition of the construction of the Medical Office Building and the exemption status of the real estate remained unchanged. Petitioners argue that this is an agreement between the local assessing officials and St. Mary's which amounts to an administrative interpretation.

Even if Petitioners are correct that there was an administrative interpretation, the doctrine of legislative acquiescence will not be applied unless the legislature is apprised of the interpretation and the interpretation is of ambiguous statutory language. Mere incorrect administrative interpretations will not invoke the doctrine. *Eagles, supra* at 681. The Indiana Supreme Court has directed the way toward a narrow application of the doctrine. The doctrine has no application to this case.

Accordingly, the court finds for the Respondent.

ORDERED this 27th day of January, 1989.