PEPSI-COLA BOTTLING COMPANY *vs*. BOARD OF ASSESSORS OF
BOSTON.

Suffolk. January 6, 1986. — April 29, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Taxation,* Real estate tax: assessment, value. *Value. Evidence,* Value.

In determining the fair market value of a parcel of land, the Appellate Tax
Board did not err by using the capitalization of income method of val-
uation rather than a recent actual sale price of the property, where the
board could reasonably conclude that the sale price had been adversely
affected by an uneconomic lease and where the taxpayer did not seek
to demonstrate the objective reasonableness of the sale price by any
other method of valuation. [449-450]

In determining the fair market value of a parcel of land through the use of
the capitalization of income method, it was within the competence of
the Appellate Tax Board to select an appropriate gross income figure
based upon a fair economic rent for the premises, rather than using the
actual rent paid under an uneconomic lease. [451-452]

In determining the fair market value of a parcel of land through the use of
the capitalization of income method, it was permissible for the Appellate
Tax Board to employ figures representing certain actual expenses of
operating the premises, while using a gross income figure which the
board had established on the basis of fair economic rent, adjusted down-
ward to reflect actual circumstances under an uneconomic lease. [452-
453]

APPEAL from a decision of the Appellate Tax Board.

*Nathan T. Wolk* for the taxpayer.

*Jan L. Rosker,* Special Assistant Corporation Counsel (*Marie
T. Lee,* Special Assistant Corporation Counsel, with her) for
Board of Assessors of Boston.

ABRAMS, J. This is an appeal by Pepsi-Cola Bottling Com-
pany (company) which challenges a decision of the Appellate
Tax Board (board) granting the company partial abatements
of real estate taxes for fiscal years 1982, 1983, and 1984. On

appeal, the company argues error in the use of the capitalization of income method of valuation rather than the 1983 actual sale price of the property, error in the use of the economic, not actual rent, and error in the use of actual expenses in determination of the net income to be capitalized. We affirm the decision of the board.

We summarize the facts as found by the board. The property in question is an industrially-zoned parcel of 89,330 square feet located in the Allston section of Boston on Storrow Drive and the Massachusetts Turnpike. There is a one-story masonry brick building on the property, consisting of 45,998 square feet, which was constructed in 1957. The building is used as a warehouse distribution center with offices. There is a substantial garage area within the building as well as truck loading and parking areas outside.

The company owned the property in 1957 and then sold it to the United States Steel and Carnegie Pension Fund (Fund) on November 29, 1957, with a lease-back arrangement. That arrangement provided for a twenty-five year lease with four five-year options. The annual rent was $66,082.63, or approximately $1.44 per square foot during the original term, decreasing to $28,941.30, or approximately sixty-three cents per square foot during the option periods. The company as lessee is responsible for the payment of all taxes and assessments, fire and liability insurance premiums, utility charges, ordinary repairs, and maintenance and structural repairs. The original term expired on December 1, 1982. At that time, the company exercised the first option. The property was sold on February 10, 1983, by the Fund in an arm's-length transaction to State Street Bank and Trust Company as trustee (bank) for $310,000.

The assessors valued the property at $385,000 for fiscal year 1982 and assessed a tax at the rate of $230.90 per $1,000 in the amount of $88,896.50. For fiscal year 1983 the property was valued at $1,150,000 and assessed a tax at the rate of $40.30 in the amount of $46,345. For fiscal year 1984, the valuation was $1,253,000, the rate was $32.54, and the tax was $40,788.89. The company timely filed applications for abatement during each of the three years. After each request

for abatement was deemed denied by the assessors, the company appealed to the board. The board found the fair cash value of the property for each of the fiscal years in question to be $991,800, and granted partial abatements.[1]

1. *The fair market value of the property.* In its decision, the board gave little weight to the company's contention that the 1983 sale price of $310,000 was the fair market value of the property. The board reasoned that the sale price was affected adversely by an uneconomic lease. The board also rejected the comparable sales approach favored by the assessors' expert because all of the properties used as comparable differed materially from the subject property in one or more respects.[2] Because of the unreliability of these other methods,[3] the board concluded that the capitalization of income approach was the appropriate method by which to value the property.

The company asserts that the recent arm's-length sale of the property is the "best indicator" of the fair market value in that it represents what a buyer has been willing to pay to a seller. See *First Nat'l Stores, Inc.* v. *Assessors of Somerville,* 358 Mass. 554, 560-561 (1971); *Assessors of Quincy* v. *Boston Consol. Gas Co.,* 309 Mass. 60, 63 (1941). It contends that the board erred in "ignoring" this "best" evidence of value. We do not agree.

The board is not required to adopt any particular method of valuation and "the rejection by the board of the evidence of [an actual sale] does not, by itself, constitute error." *New*

---

[1] The board found that the property was undervalued but disproportionately assessed for fiscal year 1982 and computed an equalized tax of $84.12, as provided by G. L. c. 58A, § 14 (1984 ed.). The disproportionate assessment is not at issue. The board found that the property was overvalued for fiscal years 1983 and 1984. The company was granted abatements in the amounts of $5,466.28 for fiscal year 1982, $6,375.46 for fiscal year 1983, and $8,515.72 for fiscal year 1984. By this appeal, it seeks abatements in the amounts of $62,819.30, $27,476.54, and $30,701.49, respectively, plus interest and costs. The assessors have not cross appealed.

[2] These factors included land area, building area, age, condition, quality of construction, location, and access.

[3] The board agreed with the assessors' expert that the depreciated reduction cost method was unreliable in the circumstances.

*Boston Garden Corp*. v. *Assessors of Boston,* 383 Mass. 456, 469 (1981). The board found that the sale price did not reflect the total value of the property due to the uneconomic lease.[4] Relying on *Donovan* v. *Haverhill,* 247 Mass. 69 (1923), the board ruled that it must value the property as though it were unencumbered by a lease because the length of the term and the annual rent were "highly unfavorable to the lessor." In *Donovan,* we said that "a deduction of the surrender value of a long term lease from the market value of the estate, ascertained by a sale of the land free of the lease, in many instances would seriously impair the taxable valuation of the estate considered as a whole." *Donovan* v. *Haverhill, supra* at 72.

The company seeks to distinguish *Donovan* because in *Donovan* there was no actual sale. That distinction is immaterial. *Donovan* focuses on the nature of what is taxed, not on the method of valuation, noting that the real estate tax is a "tax upon the whole land and not merely on the interest of the person taxed." Therefore, the assessment must be "on the entire estate and not upon any interest therein." *Donovan* v. *Haverhill, supra* at 71, 72.

In this case, the sale price admittedly reflected the value of the property encumbered by an uneconomic lease. The company did not "seek to demonstrate the objective reasonableness of the [sale price] by any other method. In these circumstances, the board had objectively adequate reasons for disregarding the opinion of value offered by the taxpayer as evidence 'substantially lacking in probative force' " (citations omitted). *Foxboro Assocs*. v. *Assessors of Foxborough,* 385 Mass. 679, 683 (1982), quoting *New Boston Garden Corp*. v. *Assessors of Boston, supra* at 468. We conclude that "the board was entitled to disregard such evidence and to accept the values generated under the capitalization of income valuation method as the best evidence of the fair cash value of the propert[y]." *Assessors of Brookline* v. *Buehler,* 396 Mass. 520, 531 (1986).

---

[4] That finding is supported by the evidence from the company's experts as well as the assessors' expert.

2. *The capitalization of income method.* The assessors' expert used a capitalization of income method to determine fair market value. The assessors' expert did not use actual rents but used comparable rentals. The board also determined that actual rents should not be used in computing a gross income figure. The company claims this conclusion by the board was erroneous. We do not agree.

In establishing an income stream, the board rejected the actual rents of either the original or option terms, concluding that "neither figure remotely approximates fair market rent" even considering the expenses for which the company was responsible under the lease. Instead, the board gave "substantial consideration" to two of the comparable rentals relied upon by the assessors' expert. The properties, located in Medford and Cambridge, leased respectively at $2.80 and $3 per square foot with the lessor assuming responsibility for fire insurance, structural repairs, and maintenance. The board, after making an upward adjustment for the location of the subject property and a downward adjustment both for its larger size and for the company's added responsibilities under the lease, concluded that $2.80 per square foot was a fair market rental value for the fiscal years in question, resulting in an annual gross rental figure of $128,800.

The use of actual rents is an acceptable method of valuation as long as they adequately reflect earning capacity. *Carye* v. *Assessors of Chelmsford,* 394 Mass. 1001 (1985). There must be a relation to market rental value. See *Alstores Realty Corp.* v. *Assessors of Peabody,* 391 Mass. 60, 68 (1984). The company does not contend that the actual rents reflect earning capacity or market rental value. However, it argues that the fixed nature of the rental income in this case is an "economic reality" analogous to the restriction on rental income in *Community Dev. Co.* v. *Assessors of Gardner,* 377 Mass. 351 (1979). In that case we held that the board erred in not taking into account the restrictions placed by Federal regulations on the rent received from a housing project. However, we specifically stated that "we do not think the restrictions on the company's housing project resemble a disadvantageous

lease." *Community Dev. Co., supra* at 355. "[T]he existence of an outstanding lease at an unrealistically low rental for a long term, not representing the fair rental value of the property is not to be used as a basis for calculating actual value." *People ex rel. Gale* v. *Tax Comm'n of the City of New York,* 17 A.D.2d 225, 230 (N.Y. 1962).

The company did not offer any evidence other than admittedly noneconomic rents on which an income stream could be established. Choosing an appropriate gross income figure for establishing an income stream was within the board's discretion and expertise. *Fox Ridge Assocs.* v. *Assessors of Marshfield,* 392 Mass. 652, 654 (1984). "The essential requirement is that the board exercise judgment." *New Boston Garden Corp.* v. *Assessors of Boston, supra* at 473. The record indicates that the board considered the testimony of the experts and exercised its own independent judgment. "One reasonably could conclude from the facts before the board that the actual . . . rental income of the property was artificially low and, therefore, an improper basis upon which to establish an income stream for income capitalization purposes." *Fox Ridge Assocs.* v. *Assessors of Marshfield, supra.* Therefore, we conclude that the board's use of fair economic rents rather than actual rents is supported by substantial evidence.

3. *Computation of expenses.* The company also claims that the board erred in calculating the net income to be capitalized because it deducted actual expenses rather than fair economic expenses. The board adopted the assessors' expert's adjustment (3% of gross income) for vacancy and collection loss based on the presence of a stable, long-term tenant and arrived at an adjusted gross income of $124,936. However, the board decreased the allowance for management fees from four per cent to three per cent of adjusted gross income because it found that the expert's figure assumed owner responsibility for fire insurance, structural repairs, and maintenance.[5] It disregarded

---

[5] The expert's report stated: "The following expenses would be incurred by a new owner of the subject property under a net rental agreement: vacancy and collection loss; management; structural insurance, and structural repairs

the expert's deduction for structural repairs and maintenance because of the company's responsibility for those items but it allowed some deduction ($2,300) for insurance expenses not covered by fire liability coverage. The board accepted the twelve per cent capitalization rate and the decision not to apply a tax factor in light of the company's responsibility under the lease for the payment of all taxes.[6]

The company claims that it is "patently unfair" to consider lease obligations when determining operating expenses and not to consider them when determining fair market value. The fact is that the board did consider the lease obligations in arriving at a market rental value and made a downward adjustment in the imputed economic rent to reflect that factor. Moreover, "[t]he issue of what expenses may be considered in any particular piece of property is for the board." *Alstores Realty Corp.* v. *Assessors of Peabody,* 391 Mass. 60, 65 (1984). There is no error.

We conclude that the board's decision is supported by substantial evidence and that the decision of the board should be affirmed.

*So ordered.*

---

and maintenance." However, as the board noted in its decision, the company was under a "net net net" lease where the lessee is responsible for the payment of all taxes and assessments, fire and liability insurance premiums, utility charges, ordinary repairs, and maintenance. In addition, as stated, the lessee was responsible for all structural repairs.

[6] The capitalization rate is not at issue.