Irving Saunders Trust vs. Board of Assessors of Boston.

No. 87-1112.

Suffolk. June 28, 1988. — February 3, 1989.

Present: Greaney, C.J., Smith, & Warner, JJ.

*Taxation*, Real estate tax: assessment, value; Appellate Tax Board: findings.
*Value. Administrative Law,* Substantial evidence. *Evidence,* Value, Relevancy and materiality.

In a proceeding before the Appellate Tax Board to determine the value of
two interconnected buildings for real estate tax purposes, in which one
of three expert witnesses estimated the fair market rental of a store
located in one of the buildings at less than the actual rent being received
under a lease entered into as a result of an arm's length transaction, the
board's imputing the lower rent to the store in determining its value was
not supported by substantial evidence, where the expert witness's estimate was prepared when the store was vacant and before the lease had
been signed, and where the record showed that the actual rent reflected
earning capacity and related to market rental value. [841-842]
In a proceeding before the Appellate Tax Board to determine for real estate
tax purposes the value of two interconnected buildings, which contained
but one space used for residential rather than commercial or retail purposes, the board's imputing a rent to that space based on its use for
residential rather than commercial purposes was not supported by substantial evidence, furthermore, the board erred in excluding evidence
offered by an expert witness that the space was rented for offices approximately one year after the assessment date, which was relevant, both in
regard to the issue whether the highest and best use of the property was
for commercial or residential property, and also in regard to the appropriate economic rent that should have been imputed to the space. [842-844]
In a proceeding before the Appellate Tax Board to determine for real estate
tax purposes the value of two interconnected buildings, one of which
contained a restaurant and a small office, substantial evidence supported
the board's calculation of the total rentable area of the restaurant, but
not its calculations of the total rentable area of the office. [845]
In a proceeding to determine the value of two interconnected buildings for
real estate tax purposes, the Appellate Tax Board erred by calculating
the taxpayer's gross rental income without including tenants' tax payments separately as an item of income, or adjusting the applicable tax
factor for each fiscal year in question. [846]

Irving Saunders Trust *v.* Board of Assessors of Boston.

In a proceeding to determine the proper real estate tax assessments on certain property, the Appellate Tax Board did not err in refusing to order the taxpayer's agent to comply with a subpoena served by municipal assessors requiring her to produce certain leases, where the assessors, with one exception, failed to show that such leases would be so relevant to their case as to warrant a conclusion that the board abused its discretion. [846]

APPEAL from a decision of the Appellate Tax Board.

*John D. Stuebing*, Special Assistant Corporation Counsel, for Board of Assessors of Boston.

*Alan E. Lipkind* for the taxpayer.

SMITH, J. The board of assessors of the city of Boston (assessors) appeals, pursuant to G. L. c. 58A, § 13, from a decision of the Appellate Tax Board (board), granting the Irving Saunders Trust (taxpayer), abatements of real estate taxes for fiscal 1983, 1984, and 1985 on its property located at 39-45 Newbury Street. That property consists of 9,352 square feet of land improved by two interconnected brick buildings that were constructed around the turn of this century. The building known as 39 Newbury Street is four stories in height. During the period at issue, the basement space, located about five steps down from the sidewalk, was used for retail purposes. The first floor, about six steps up from the sidewalk, was used for a store (the Shinera space). The second and third floors had offices, and the fourth floor was used for residential apartments (the Saunders space). The building located at 45 Newbury Street is five stories in height. A restaurant (Magic Pan) occupied the first floor. There was a small office on the second floor (Carter-Vincent). The remaining space in the building was used for offices.

The property had been assessed for the fiscal years in question as follows:

| Fiscal Year | Assessed Valuation | Tax Rate | Tax |
|---|---|---|---|
| 1983 | $ 2,491,500 | $ 40.30 | $100,407.45 |
| 1984 | 2,715,735 | 32.54 | 88,370.02 |
| 1985 | 3,177,400 | 31.36 | 99,643.26 |

The taxpayer timely filed abatement applications with the assessors and also paid the taxes. The assessors denied the applications for abatements, and the taxpayer filed timely appeals for each year to the board. The taxpayer alleged that the assessors had overvalued and also disproportionally assessed the property.

At the trial, three experts gave their opinions as to valuation of the property. One expert testified for the taxpayer, another expert for the assessors. The third expert, one Collins, appeared and testified as a result of a subpoena that he received from the assessors. He had been hired in 1982 by one of the owners of the property to make an appraisal in connection with some intra-family transfers in connection with the property. All the experts used the capitalization of income approach to determine value.

After several days of trial and review of the exhibits, the board issued its written findings of fact and decision. Although it used the capitalization of income approach to value, it did not adopt any of the appraised values assigned to the property by the experts.[1] In making its own determination of value, the board prepared a "fair rental schedule" for the fiscal years in question. It used the same estimate of fair rental value for fiscal 1983 and 1984 on the ground that many of the leases existing in 1983 were not due to expire until the calendar years 1983-1985. For fiscal 1985, the board increased its fair rental value by five percent to give effect to percentage increases in fair market rentals.

In its decision, the board granted to the taxpayer the following abatements on the property.

| Fiscal Year | Assessed Value | Fair Cash Value | Taxes Abated |
|---|---|---|---|
| 1983 | $2,491,500 | $1,574,229 | $36,966.01 |
| 1984 | 2,715,735 | 1,777,395 | 30,533.58 |
| 1985 | 3,177,400 | 1,887,754 | 40,443.29 |

[1] The board did state that, "[f]or its own estimate of fair rental values, [it] considered the estimates of the three appraisers and the factors employed by them in their estimates giving more weight to the Collins estimates and methodology . . . ."

On appeal, the assessors claim that the board's decision and several of its findings were not supported by substantial evidence. They also contend that the board made two erroneous rulings, namely, not permitting the assessors' expert to testify as to the actual rent received by the taxpayer for the Saunders space for fiscal 1985 and refusing to order the taxpayer's agent to comply with the assessors' subpoena to produce certain 1985 leases.

1. *The substantial evidence issue.* It is well established that the board's findings of fact and its decision must be supported by substantial evidence. *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 465 (1981). *Stilson* v. *Assessors of Gloucester*, 385 Mass. 724, 729 (1982). Substantial evidence has been defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." *New Boston Garden Corp.* v. *Assessors of Boston, supra* at 466. A reviewing court must set aside a finding of the board if "the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary." *Ibid.*, 466, quoting from Jaffe, Judicial Control of Administrative Action 598 (1965). Also, "we are not required to affirm the board merely on a finding that the record contains evidence from which a rational mind might draw the desired inference. Our determination must be made 'upon consideration of the entire record.' " *Id.*, quoting from *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 253 (1966). In the instant case, the assessors claim that the values assigned by the board to the Shinera, Saunders, Magic Pan, and Carter-Vincent spaces are not based on substantial evidence. The assessors also claim that the board erred in failing to include in its calculations tax payments made by the tenants. We agree with the assessors as to their claims in regard to the Shinera, Saunders, and Carter-Vincent spaces. We also hold that the board should have included tax payments in their calculations.

a. *The Shinera space.* There was uncontradicted evidence in the form of a lease that the Shinera space was rented to one Gilmore in fiscal 1984 and 1985 for thirty dollars per square foot. The board, however, without explanation or comment,

did not use the actual rent but rather imputed a lower rent of twenty-five dollars per square foot for fiscal 1984 and $26.25 per square foot for fiscal 1985. The assessors argue that there was no substantial evidence for the board's use of the lower rent and that it should have used the actual rent.

"The use of actual rents is an acceptable method of valuation as long as they adequately reflect earning capacity . . . [and relate] to market rental value." *Pepsi-Cola Bottling Co.* v. *Assessors of Boston*, 397 Mass. 447, 451 (1986) (citations omitted). Although both the expert for the assessors and the expert for the taxpayer used the actual rent in determining value, Collins in his 1982 appraisal report estimated the fair market rent for the space at twenty-five dollars per square foot. That report, however, was prepared when the space was vacant and before the lease had been signed. "Although we must meticulously avoid weighing the evidence, testimony that cannot reasonably form the basis of impartial, reasoned judgment may be discredited; e.g., testimony that 'carries its own death wound,' *NLRB* v. *Pittsburgh S.S. Co.*, 337 U.S. 656, 660 (1949), or supporting testimony that is robbed of persuasive substance by other testimony, not itself directly contradicted, which logically impairs the supporting testimony." *New Boston Garden Corp.* v. *Assessors of Boston*, supra at 467-468.

Here, Collins's evidence of the fair market rent for the space was discredited by a lease which he admittedly did not use in his computation. That lease was entered into as a result of an arms-length transaction. Further, the record shows that the actual rents reflect earning capacity and relate to market rental value. We conclude that the rents assigned by the board to the Shinera space are not supported by substantial evidence.

b. *The Saunders space.* The entire property was used for commercial and retail purposes, with one exception. One space was rented for a time to a relative of one of the owners for use as a residential apartment and was used as an apartment until December, 1984. Accordingly, the board considered the Saunders space to be residential at least for the years in question. It determined that the actual rent charged for the space was not fair market rent and imputed a rent, adopting Collins's

fair economic rent of six dollars per square foot for residential space. See *Alstores Realty Corp.* v. *Assessors of Peabody*, 391 Mass. 60, 68 (1984); *Carye* v. *Assessors of Chelmsford*, 394 Mass. 1001 (1985); *Pepsi-Cola Bottling Co.* v. *Assessors of Boston*, 397 Mass. at 451.

The assessors claim that there was no substantial evidence to support the board's choice of residential rather than commercial rents for the space. The assessors also contend that the board erred when it refused to allow their expert to testify as to the rent paid for the Saunders space in fiscal 1985. There was evidence from that expert that the space was rented for offices in December, 1984. The assessors argue that evidence of a lease entered into in fiscal 1985, approximately one year after the assessment date, is relevant, both in regard to the issue whether the highest and best use of the property was for commercial or residential property, and also in regard to the appropriate economic rent that should have been imputed to the space. We agree.

In determining fair market value, the board must determine " 'the highest price which a hypothetical willing buyer would pay to a hypothetical willing seller in an assumed free and open market.' " *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.*, 335 Mass. 189, 193 (1956), quoting from *Epstein* v. *Boston Housing Authy.*, 317 Mass. 297, 299-300 (1944). See *Boston Edison Co.* v. *Assessors of Watertown*, 387 Mass. 298, 301 (1982), *S.C.*, 393 Mass. 511 (1984); *Salem Country Club, Inc.* v. *Peabody Redevelopment Authy.*, 21 Mass. App. Ct. 433, 434-435 (1986). "All the uses to which the property is reasonably adapted may be considered . . ., 'with a view of ascertaining what the property is worth in the market for any use for which it would bring the most.' " *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.*, 335 Mass. at 193-194, quoting from *Conness* v. *Commonwealth*, 184 Mass. 541, 543 (1904). See also *Mashpee Wampanoag Indian Tribal Council, Inc.* v. *Assessors of Mashpee*, 379 Mass. 420, 421 (1980). It is undisputed that the Saunders space was used for residential purposes at least until December, 1984, and that two of the experts, the taxpayer's and Collins,

testified that the space could not be used for commercial pur-
poses without a considerable amount of renovations. All the
experts agreed, however, that the highest and best use of the
entire property was for commercial purposes. The Saunders
space had been leased (initially, to a relative) for purposes
which patently underutilized the premises.[2] The excluded evi-
dence tended to show that within one year the Saunders space
had been converted to a use (office space) consonant with the
undisputed and unanimous testimony concerning the highest
and best use. In such circumstances, we think that it is open
to the assessors to show the actual commercial rental amount
paid for the Saunders space in 1985, as adjusted for time, and
evidence (if any) of the cost of renovating the space. Such
evidence is relevant to the board's imputation of a fair economic
rent for the Saunders space as of January 1, 1984, the assess-
ment date here at issue. We conclude that the board abused
its discretion in excluding the relevant evidence and remand
to the board for an evidentiary hearing on this issue.[3]

---

[2] It has been acknowledged that the actual income received by the owner
of a parcel of realty may vary for various reasons, such as "imprudent
management, irresponsible tenants or disadvantageous leases." *Old Colony
R.R.* v. *Assessors of Boston*, 309 Mass. 439, 446 (1941). Such reasons,
without more, are insufficient for entitlement to an abatement. See *Donovan*
v. *Haverhill*, 247 Mass. 69, 72 (1923). Compare *Community Dev. Co.* v.
*Assessors of Gardner*, 377 Mass. 351, 354-356 (1979). It is the earning
capacity of real estate, rather than its actual income, which is probative of
fair market value. *Assessors of Quincy* v. *Boston Consol. Gas Co.*, 309
Mass. 60, 64 (1941). *Carye* v. *Assessors of Chelmsford*, 394 Mass. at
1001. The board acknowledged that the actual rent for the Saunders space
was not an economic rent. In imputing an economic residential rent three
to four times less than the fair rental value per square foot for commercial
uses, however, the board apparently accepted the taxpayer's purposeful
underutilization of the space, despite the testimony of the three experts and
the assessors' attempts to demonstrate that the earning capacity of the space
was higher. We do not intimate that the board could not credit the evidence
of the substantial cost to convert the premises. The assessors were entitled,
however, to introduce competent evidence in rebuttal.

[3] The board has not set forth any reasons for its conclusion that exclusion
of the offered evidence was warranted. See *Assessors of Lynnfield* v. *New
England Oyster House, Inc.*, 362 Mass. 696, 700 (1972); *New Boston
Garden Corp.* v. *Assessors of Boston*, 383 Mass. at 467. Under the cir-
cumstances, we conclude that the board's imputation of an economic resi-
dential rent for the Saunders space is not supported by substantial evidence.
On remand, however, after introduction of the revelevant evidence, the weight

c. *The Magic Pan and Carter-Vincent spaces.* The assessors claim that the board miscalculated the total rentable area of the property. In particular, the assessors point to the total square footage assigned by the board to the Magic Pan and Carter-Vincent spaces.

The board calculated that the total rentable area of the Magic Pan came to 4,000 square feet. That figure was the same as the figure advanced by the taxpayer's expert and Collins. By contrast, the assessors' expert determined that the square footage of the space was 7,436 square feet.[4] The discrepancy between the figures was caused by the different treatment by the experts of the mezzanine area used by Magic Pan. The taxpayer's expert and Collins were of the opinion that the mezzanine area was an amenity and, therefore, should not be included in the total rentable area. The assessors' expert disagreed and included the mezzanine area. The board adopted the reasoning of the taxpayer's expert and Collins. There was no error because there was substantial evidence to support the board's finding that there were 4,000 square feet of rentable area.

In regard to Carter-Vincent space, the board used the figure of 400 square feet. However, the lease itself, in contrast to the Magic Pan lease (see note 4), states that the area is 450 square feet. The taxpayer's expert used the figure of 400 square feet but admitted that he had not read the lease. There does not appear to be any substantial evidence in the record to support the board's finding of 400 square feet.[5]

---

to be afforded such evidence is for the board. See *id.* at 473; *North American Phillips Lighting Corp.* v. *Assessors of Lynn,* 392 Mass. 296, 300-301 (1984); *Assessors of Brookline* v. *Buehler,* 396 Mass. 520, 531-532 (1986).

[4] The assessors claim that the Magic Pan lease states that Magic Pan occupies 4,481 square feet on the first floor, 2,955 square feet on the mezzanine and 1,586 square feet in the basement. The lease, itself, does not mention the square footage of the area. There are drawings of the various areas duplicated in the appendix. However, they are unreadable in regard to the total square footage.

[5] The taxpayer in his brief does not argue otherwise in regard to the Carter-Vincent space.

d. *The tax payment clauses.* Some of the leases contained tax payment clauses.[6] There is no indication in the board's decision that the tax payments were included as a separate item of income, and it is clear that the tax factor used by the board in each instance was the applicable tax rate for each fiscal year, without any adjustment. The assessors claim that the board's omission of the tax payments was error. We agree. The board either should have included the payments separately as income, or should have adjusted the tax factor. *Alstores Realty Corp.* v. *Assessors of Peabody*, 391 Mass. at 69.

2. *The exclusion of the leases.* The assessors served a subpoena on an agent of the taxpayer requiring her to appear at the trial and bring certain leases, including those entered into in fiscal 1985. On objection by the taxpayer, the board refused to require compliance with the subpoenas, and the assessors claim error.

"The tax year for each community begins on July 1 and ends on June 30 and is referred to as the 'fiscal year.'" Bailey & Van Dorn, Taxation § 524 (1986). The assessment date for the property tax is the January 1 preceding the fiscal year to which taxes are assessed. G. L. c. 59, § 21. On this record, the assessors, with one exception (see part 1(b) of this opinion), have failed to show that such leases would be so relevant to the assessors' case as to warrant a conclusion that the board abused its discretion.

3. *Conclusion.* The decision of the board is reversed and these matters are remanded to the board for further proceedings consistent with this opinion.

*So ordered.*

---

[6] The assessors claim that all of the leases contained tax payment clauses and refer to leases that are in the appendix. It is not clear whether all of the leases are in the appendix. The taxpayer concedes that a "few" of the leases contained such clauses. There is no question that at least some of the leases contained tax payment clauses.