716      451 Mass. 716 (2008)

WB&T Mortgage Company, Inc. *v.* Board of Assessors of Boston.

# WB&T Mortgage Company, Inc. *vs.* Board of Assessors of Boston.

Suffolk. March 3, 2008. - July 2, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Taxation,* Real estate tax: assessment, Real estate tax: exemption, Real estate tax: charity, Real estate tax: value, Exemption, Value. *Constitutional Law,* Taxation. *Real Property,* Tax.

This court concluded that G. L. c. 59, § 2C, which employs a certain method for assessing taxes on real property purchased from a tax-exempt entity by a nonexempt entity, imposes a tax, rather than an excise or other governmental exaction, and must therefore satisfy the constitutional requirement of proportionality. [720-721]

This court concluded that G. L. c. 59, § 2C, which employs a method for assessing taxes on real property purchased from a tax-exempt entity by a nonexempt entity, does not impose an unconstitutional disproportionate or discriminatory tax on purchasers of such property, where the statute is a reasonable method of effectuating the withdrawal, removal, or termination of the exemption when the subject property is no longer owned by a tax-exempt entity or used for a tax-exempt purpose [721-725]; further, this court concluded that calculation of the tax, as an interim measure, on the basis of the property's purchase price and date of sale rather than the fair cash valuation of the property as of January 1 preceding the applicable fiscal year was not unreasonable, disproportionate, or unconstitutional [725-727].

In an abatement proceeding before the Appellate Tax Board, the taxpayer failed to present sufficient evidence to demonstrate that G. L. c. 59, § 2C, which employs a certain method for assessing taxes on real property purchased from a tax-exempt entity by a nonexempt entity, was unconstitutional as applied to the taxpayer or to the property at issue. [727-728]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Daniel J. Brown* for the taxpayer.

*Adam Cederbaum* for Board of Assessors of Boston.

*Martha Coakley,* Attorney General, *& Kenneth W. Salinger,* Assistant Attorney General, for the Commonwealth, amicus curiae, submitted a brief.

Marshall, C.J. For more than 300 years, "proportionable and

reasonable assessments, rates and taxes" have been imposed and levied on the Commonwealth's inhabitants and residents, and the estates lying within its borders. 1691 Charter of the Province of the Massachusetts Bay.[1,2] Among the properties now exempted by statute from those levies are those that are owned or held in trust by charitable and other organizations that serve a public purpose. See, e.g., G. L. c. 59, § 5, Third (appearing in similar form in Rev. St. [1836], c. 7, § 5, Second).

At issue in this case is the immediate consequence of the termination of that exemption when exempt property is sold to a nonexempt buyer. We consider the constitutionality of G. L. c. 59, § 2C (*a*),[3] which employs, as an interim measure, a method for assessing taxes on real property purchased from a tax-exempt entity different from the method imposed on other real property

---

[1]The 1691 Charter of the Province of the Massachusetts Bay, sometimes referred to as the Province Charter, authorized assessment of proportional taxation:

> "[A]nd to impose and levy proportionable and reasonable assessments, rates and taxes, upon the estates and persons of all and every the proprietors and inhabitants of our said province or territory, to be issued and disposed of by warrant under the hand of the governor of our said province for the time being, with the advice and consent of the council, for our service in the necessary defence and support of our government of our said province or territory, and the protection and preservation of the inhabitants there, according to such acts as are or shall be in force within our said province; and to dispose of matters and things whereby our subjects, inhabitants of our said province, may be religiously, peaceably and civilly governed, protected and defended . . . ."

The Charters and General Laws of the Colony and Province of Massachusetts Bay 18, 33 (T.B. Wait & Co. ed., 1814). See *Opinion of the Justices*, 324 Mass. 724, 727-728 (1949).

[2]See Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth.

[3]General Laws c. 59, § 2C, provides, in relevant part:

> "[W]henever in any fiscal year . . . any entity whose real estate is exempt under clauses Third, Four, Four A, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth and Thirteenth of section five, shall sell any real estate after January first in any year, the grantee of the real estate shall pay a pro rata amount or amounts, as hereinafter defined, to the city or town where such real estate is located in lieu of taxes that would have been due for the applicable fiscal year under this chapter if the real estate had been so owned on January first of the year of sale and, with respect to a sale between January first and June thirtieth, if the real estate had been so owned on January first of the year of sale

pursuant to G. L. c. 59, § 2A (*a*).[4] By a divided panel, the Appellate Tax Board (board) denied the nonexempt taxpayer's request for an abatement of that pro forma tax computed and assessed under G. L. c. 59, § 2C, for the portion of fiscal year 2000 that came after the property was purchased on December 17, 1999.

The board concluded that § 2C is not unconstitutional on its face, and that the taxpayer failed to meet its burden of demonstrating that § 2C was unconstitutional as applied to it, because the taxpayer failed to produce substantial evidence of the fair cash valuation of the property as of the relevant valuation date, January 1, 1999.[5] The taxpayer appealed, pursuant to G. L. c. 58A, § 13, arguing that the statute is both facially unconstitu-

> and the preceding year. The pro rata amounts payable to the city or town shall be determined as follows:
>
> "(*a*) A portion of a pro forma tax for the fiscal year in which such sale occurred allocable on a pro rata basis to the days remaining in such fiscal year from the date of sale to the end of the fiscal year; and
>
> "(*b*) A pro forma tax for the succeeding fiscal year where the sales take place between January first and June thirtieth of any year.
>
> "The pro forma tax shall be computed by applying the tax rate or the appropriate classified tax rate of the city or town for the fiscal year in which such sale occurs, to the sale price after crediting any exemption to which the grantee would have been entitled under this chapter if the real estate had been so owned on January first of the year of sale."

We do not consider G. L. c. 59, § 2C (*b*), which does not apply to the transaction here at issue.

[4] In general, G. L. c. 59, § 2C, requires that a "pro forma tax" be based on the purchase price of the real property, while G. L. c. 59, § 2A, requires assessment based on the property's "fair cash valuation." In addition, the relevant assessment date under § 2C is the date of sale, rather than the January 1 preceding the relevant fiscal year, as § 2A provides. Section 2C additionally calculates the "pro forma tax" differently, depending on the timing of the real estate transaction.

[5] A majority of the Appellate Tax Board (board) ruled that G. L. c. 59, § 2C (*a*), imposes a property tax and, therefore, that it must be proportional. Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth. While noting that purchase price may not always be determinative of fair cash value, see, e.g., *Pepsi-Cola Bottling Co.* v. *Assessors of Boston*, 397 Mass. 447, 449-450 (1986), it held that the purchase price is, in general, "the most persuasive evidence of value," and that the board has latitude in determining whether purchase price is the best evidence as of the relevant valuation date. The board concluded that the "practical operation" of § 2C does not "directly and neces-

451 Mass. 716 (2008) 719

WB&T Mortgage Company, Inc. v. Board of Assessors of Boston.

tional and unconstitutional as applied. We transferred the appeal to this court on our own motion, and now affirm the board's decision on different grounds.[6]

*Background.* The case was submitted to the board on a statement of agreed facts, and we briefly summarize the board's findings. *United Church of Religious Science* v. *Assessors of Attleboro*, 372 Mass. 280, 281 (1977) (decision of Appellate Tax Board final as to findings of fact). On December 17, 1999 (midway through the 2000 fiscal year), WB&T Mortgage Company, Inc. (WB&T or taxpayer), purchased two parcels of land in Boston, adjacent to property it already owned, from the Roman Catholic Archdiocese of Boston (Archdiocese) for a total sales price of $4,500,000.[7] The Archdiocese, a religious organization, was not subject to real estate tax on the parcels.

For purposes of taxation, valuation of most nonexempt real and personal property is established as of the January 1 preceding the applicable fiscal year. G. L. c. 59, §§ 2A, 18. Sixteen months after WB&T's purchase of the property, in April, 2001, the board of assessors of Boston (city) issued tax bills to WB&T for fiscal year 2001 (July 1, 2000, to June 30, 2001), reflecting that it had assigned a "total full valuation" of $3,281,600 to the property as of January 1, 2000.

Thereafter, on November 21, 2001, the city issued a tax bill for fiscal year 2000 (July 1, 1999, to June 30, 2000) to WB&T pursuant to G. L. c. 59, § 2C, in the amount of $82,861.11. That amount was based on the sales price of $4,500,000, a tax rate of $34.21 per thousand and, according to the "pro forma" tax bill, a total of 197 days during fiscal year 2000 (i.e., December 17, 1999, to June 30, 2000) that WB&T owned the property.[8]

---

sarily . . . produce disproportion," *Cheshire* v. *County Comm'rs of Berkshire*, 118 Mass. 386, 389 (1875), and that § 2C is facially constitutional. Further, the board concluded that § 2C is not unconstitutional as applied because the taxpayer did not establish that the § 2C tax imposed on it was disproportionate, that is, that the purchase price on which the tax was calculated exceeded the fair cash value as of January 1, 1999.

[6]We acknowledge the amicus brief filed on behalf of the Commonwealth by the Attorney General in support of the board of assessors of Boston.

[7]The property deed lists the Roman Catholic Archbishop of Boston, a corporation sole, as the grantor. In their agreed statement of facts and throughout, the parties refer to the grantor as the Roman Catholic Archdiocese of Boston, as will we.

[8]For fiscal year 2000, WB&T owned the property for 197 days, i.e, December

WB&T paid the tax on December 20, 2001, without interest, and applied for an abatement the following day. The application was deemed denied (by operation of statute, due to the assessors' inaction) on March 21, 2002, G. L. c. 59, § 63, and the taxpayer filed its appeal within ninety days, on June 21, 2002. See G. L. c. 58A, § 13.

*Discussion.* 1. *Preliminary considerations.* Although not disputed by the parties on appeal, a threshold issue is whether G. L. c. 59, § 2C, imposes a tax, rather than an excise or other governmental exaction, and must therefore satisfy the constitutional requirement of proportionality. Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth. See *Thomson Elec. Welding Co.* v. *Commonwealth*, 275 Mass. 426, 429 (1931); *Portland Bank* v. *Apthorp*, 12 Mass. 252, 255-256 (1815). While § 2C uses the phrases "a pro rata amount . . . in lieu of taxes" and "pro forma tax" to describe the obligation, we determine the nature of such an assessment "by its operation rather than its specially descriptive phrase," *Emerson College* v. *Boston*, 391 Mass. 415, 424 (1984), quoting *Thomson Elec. Welding Co.* v. *Commonwealth, supra* at 429, respecting the Legislature's intent in drafting the statute. *Associated Indus. of Mass, Inc.* v. *Commissioner of Revenue*, 378 Mass. 657, 667-668 (1979).

The board concluded, and we agree, that the statute exacts a tax. Among other things, G. L. c. 59, § 2C, provides that "[s]ums received under this section . . . shall be credited to the general fund of the city or town." That the revenue obtained by operation of § 2C is destined for the "general fund" rather than for a particular purpose "while not decisive, is of weight in indicating that the charge is a tax." *Emerson College* v. *Boston, supra* at 427, quoting P. Nichols, Taxation in Massachusetts 7 (3d ed. 1938). Further, the § 2C rubric approximates the property tax that would have been due if the property had been transferred by a nonexempt grantor, and is specifically referred to as "in lieu of taxes that would have been due" if the property had been owned by a nonexempt purchaser on January 1. Finally, unlike

17 though June 30. The tax was calculated by applying the tax rate ($34.21 per thousand) to the sales price ($4,500,000), and multiplying the result by the ratio of days WB&T owned the property (197) to the total days in the year (366, considering the 2000 leap year).

contractually-agreed payments "in lieu of taxes," *Anderson St. Assocs.* v. *Boston*, 442 Mass. 812, 817-818 (2004), there is no "voluntary act" or "privilege" for which the § 2C amount is levied. *Emerson College* v. *Boston, supra* at 428. See *German* v. *Commonwealth*, 410 Mass. 445, 448 (1991), quoting *Opinion of the Justices*, 393 Mass. 1209, 1216 (1984) (tax is "revenue-raising exaction imposed through generally applicable rates to defray public expense").

2. *Constitutionality of G. L. c. 59, § 2C.* The preeminent issue before us is whether, by authorizing a "pro forma tax" based on purchase price and date rather than fair cash valuation as of January 1, G. L. c. 59, § 2C, imposes an unconstitutional disproportionate or discriminatory tax on purchasers of real property from tax-exempt entities. We start from the premise that "[a] tax measure is presumed valid and is entitled to the benefit of any constitutional doubt, and the burden of proving its invalidity falls on those who challenge the measure." *Opinion of the Justices*, 425 Mass. 1201, 1203-1204 (1997), citing *Daley* v. *State Tax Comm'n*, 376 Mass. 861, 865 (1978). See *Sylvester* v. *Commissioner of Revenue*, 445 Mass. 304, 308 (2005), cert. denied, 547 U.S. 1147 (2006); *Andover Sav. Bank* v. *Commissioner of Revenue*, 387 Mass. 229, 235 (1982). A statute survives such scrutiny if it "may reasonably be applied in ways that do not violate constitutional safeguards." *Route One Liquors, Inc.* v. *Secretary of Admin. & Fin.*, 439 Mass. 111, 117 (2003), quoting *Opinion of the Justices, supra* at 1218.

The board ruled that G. L. c. 59, § 2C, is not facially unconstitutional, but that it would be unconstitutional as applied if the purchase price on which the § 2C calculation was based exceeded the "fair cash valuation," G. L. c. 59, § 38, the standard applied to taxation of other real property. Giving deference to the board's expertise in interpretation of the tax laws of the Commonwealth, *Northeast Petroleum Corp.* v. *Commissioner of Revenue*, 395 Mass. 207, 213 (1985), citing *French* v. *Assessors of Boston*, 383 Mass. 481, 482 (1981) (we defer to "expertise of the board in tax matters involving interpretation of the laws of the Commonwealth"), but applying our independent judgment as to both law and facts on the constitutional issues, *Opinion of the Justices*, 328 Mass. 679, 686-687 (1952), we conclude

that the statute is constitutional, both on its face and as applied to this taxpayer.

a. *Facial challenge.* Under the Constitution of the Commonwealth, the Legislature may "impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the . . . Commonwealth." Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth. By addressing the absence of any tax assessment on property transferred from a tax-exempt entity for the period before the established proportionate system of taxation begins, G. L. c. 59, § 2C (*a*), is a proper exercise of that power of proportional taxation, ensuring that nonexempt properties do not benefit from an unintended tax exemption, and that disproportionate taxation is reduced generally. *C & S Wholesale Growers, Inc.* v. *Westfield*, 436 Mass. 459, 463 (2002).

Among the fundamental rights afforded by the Massachusetts Declaration of Rights is the right to enjoyment of "property." Art. 10 of the Massachusetts Declaration of Rights. That right, however, is not unfettered and comes with an attendant obligation:

> "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws. He is obliged, consequently, to contribute his share to the expense of this protection . . . ."

*Id.* Building on that principle, our cases long have recognized that, just as the Commonwealth assumes the protection of the property within its borders, so too must that property be "held subject to the reciprocal obligation of meeting, in its due proportion, the expenses incident to such protection." *Boston Soc'y of Redemptorist Fathers* v. *Boston*, 129 Mass. 178, 180 (1880). See *Portland Bank* v. *Apthorp*, 12 Mass. 252, 256 (1815) (reasonable and proportional taxation historically "seems to be intended as a contribution of the individual citizens, in proportion to the property, whether real or personal, which they are respectively worth").

Lest proportionality become mechanistic, however, the constitutional charge of proportionality is mitigated by the Legislature's discretionary power to establish reasonable exemptions from taxation. Part II, c. 1, § 1, art. 4, of the Constitution of the

Commonwealth. *Assessors of Boston* v. *Metropolitan Life Ins. Co.*, 320 Mass. 559, 562 (1947) (statutory excise tax on corporation not violative of constitutional requirement of proportionality, given that Constitution does not preclude reasonable exemptions). *Assessors of Quincy* v. *Cunningham Found.*, 305 Mass. 411, 416-418 (1940). *Opinion of the Justices*, 211 Mass. 624, 625 (1912). While the Constitution requires property taxes to be "proportional and reasonable," Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth, "neither this constitutional provision nor the more general provisions of art. 10 . . . precludes reasonable exemptions." *Assessors of Quincy* v. *Cunningham Found.*, *supra* at 416. See *Associated Indus. of Mass., Inc.* v. *Commissioner of Revenue*, 378 Mass. 657, 668-669 (1979); *Daley* v. *State Tax Comm'n*, 376 Mass. 861, 866 (1978).

The Legislature long has authorized an exemption from taxation for property "actually devoted to a public use," primarily because such property, "held and used for the benefit of the public[,] ought not to be made to share the burden of paying the public expenses." *Assessors of Quincy* v. *Cunningham Found.*, *supra* at 417.[9] See *Opinion of the Justices*, 220 Mass. 613, 619 (1915); *Oliver* v. *Washington Mills*, 11 Allen 268, 275 (1865). General Laws c. 59, § 5, for example, limits tax-exempt status to real estate actually devoted to public or quasi public purposes, consistent with the concept that tax exemptions are a form of government assistance properly available for the "promotion of public interests and not the furtherance of the advantage of individuals." *Opinion of the Justices*, 211 Mass. 624, 625 (1912). Such exemptions also have been authorized on the basis that charitable entities contribute to the public good in ways other than by providing financial support. See *Opinion of the Justices*, 324 Mass. 724, 731-732 (1949); *Assessors of Quincy* v *Cunningham Found.*, *supra* at 419; *Massachusetts Gen. Hosp.* v. *Belmont*, 233 Mass. 190, 203 (1919) (exemption for charitable entities justified by view that State's obligation to minister to human and social needs discharged by private charity).

When the basis on which an exemption is founded no longer exists, the exemption ceases to be reasonable, and consistent

---

[9] The actual use to which the Archdiocese put the property while it was in the Archdiocese's possession is not in the record.

with its constitutional obligation to levy proportional taxation, the Legislature has the power to limit or terminate the exemption. *Opinions of the Justices*, 365 Mass. 665, 668 (1974), citing *Assessors of Newton* v. *Pickwick Ltd.*, 351 Mass. 621, 623 (1967) ("Legislature may repeal previously granted tax exemptions. Tax exemptions are a matter of legislative grace"). *Massachusetts Gen. Hosp.* v. *Belmont, supra* at 200. Put another way, the constitutional power to create an exemption includes the power to change or destroy that exemption, consistent also with the constitutional principle of proportionality. We construe G. L. c. 59, § 2C, as a reasonable method of effectuating the withdrawal, removal, or termination of an exemption when the subject property is no longer owned by a tax-exempt entity or used for a tax-exempt purpose. See *Assessors of Quincy* v. *Cunningham Found., supra* at 414-415. *Opinion of the Justices*, 324 Mass. 724, 733 (1949) (exemptions valid where they do not "materially . . . impair the constitutional principle of proportional taxation of property"). *Opinion of the Justices*, 261 Mass. 523, 546-547 (1927) (Legislature has broad power to grant exemptions for *proper* purposes). See *Milton Hosp. & Convalescent Home* v. *Assessors of Milton*, 360 Mass. 63, 67 (1971) (rule of proportional exemption applies where there is ascertainable nonexempt use). See also *Lynn Hosp.* v. *Assessors of Lynn*, 383 Mass. 14 (1981). Indeed, as was noted in *Oliver* v. *Washington Mills, supra* at 275, the essential principle of proportionality permits the Legislature to require valuation of property "oftener" than the Constitution requires, to "render it certain" that taxation is equal:

> "This rule of proportion was based on the obvious and just principle that the benefit which each person derives from the government has direct relation to the amount of property which he possesses and enjoys under its sanction and protection. It was to prevent this essential principle from being violated or disregarded, and to render it certain that taxation for general purposes of government should be made equal, that it was expressly provided in the constitution that a valuation of estates within the Commonwealth should be taken anew decennially at least, and oftener if the legislature should order."

See *C & S Wholesale Grocers, Inc.* v. *Westfield*, 436 Mass. 459, 463 (2002) (inclusion of value of mid-year property improvements reduces incidents of owners' "use of more municipal services without contributing their share of municipal expenses"). Albeit on a somewhat different basis from that adopted by the board, *Ng Bros. Constr.* v. *Cranney*, 436 Mass. 638, 639 (2002), we therefore conclude G. L. c. 59, § 2C (*a*), is facially valid.

b. *Validity of valuation method.* We turn now to the question whether, if the Legislature may authorize taxation when property is transferred from a tax-exempt entity or tax-exempt purpose, G. L. c. 59, § 2C, that tax may be calculated, on a temporary basis, on the basis of the property's purchase price and date of sale rather than the fair cash valuation of the property as of January 1. The taxpayer argues that the different method of calculating the tax results in unconstitutionally disproportionate taxation and, therefore, that it is entitled to full abatement of the tax assessment pursuant to § 2C. We conclude, in the circumstances of this case, that the valuation method of § 2C (*a*) is neither unreasonable, disproportionate, nor unconstitutional. See *Springfield* v. *Assessors of Granville*, 378 Mass. 159, 163-164 (1979) (with respect to constitutionality of statute fixing valuation of power plant, "no showing either that the scheme of fixed valuation and exemption was unreasonable when enacted, or that circumstances have since rendered it unfair").

By authorizing assessors to use the purchase price to measure the fair cash value of property purchased mid-year from a tax-exempt entity, G. L. c. 59, § 2C, provides a reasonable method for assessing taxes on property that, prior to the sale, was exempt from real estate tax. Such property is not part of the triennial revaluation process, G. L. c. 40, § 56, and is not subject to pre-assessment information requests pursuant to G. L. c. 59, § 38D.[10] Using the purchase price is a reasonable method for ascertaining the "fair cash value" of property owned, in the first part of a fiscal year, by tax-exempt entities. See *Northwest Assocs.* v. *Assessors of Burlington*, 392 Mass. 593, 594 (1984) (fair market value

[10]General Laws c. 59, § 38D, provides in part that "[a] board of assessors may request the owner or lessee of any real property to make a written return under oath within sixty days containing such information as may reasonably be required by it to determine the actual fair cash valuation of such property."

may be estimated in several ways); *Keniston* v. *Assessors of Boston*, 380 Mass. 888, 894-895 (1980) (temporary nature of tax statute "mitigates any residual discrimination"); *First Nat'l Stores, Inc.* v. *Assessors of Somerville*, 358 Mass. 554, 560 (1971) ("Actual sales are, of course, very strong evidence of fair market value, for they represent what a buyer has been willing to pay a seller for a particular property").

Tax assessors are obliged, both statutorily and constitutionally, to assess all real property at its full and fair cash value. See *Assessors of Weymouth* v. *Curtis*, 375 Mass. 493, 498-499 (1978); *Coomey* v. *Assessors of Sandwich*, 367 Mass. 836, 837 (1975); *Opinion of the Justices*, 344 Mass. 766, 768 (1962); *Opinion of the Justices*, 332 Mass. 769 (1955). Nonetheless, that determination is inherently inexact. See *Sudbury* v. *Commissioner of Corps. & Taxation*, 366 Mass. 558 (1974); *First Nat'l Stores, Inc.* v. *Assessors of Somerville, supra*. See also *Ramacorti* v. *Boston Redevelopment Auth.*, 341 Mass. 377 (1960); *Opinion of the Justices*, 195 Mass. 607, 609 (1908). Given that mathematical precision is not required, *Bettigole* v. *Assessors of Springfield*, 343 Mass. 223 (1961), and that fair market value sometimes is equated with fair cash value, *Massachusetts Gen. Hosp.* v. *Belmont*, 233 Mass. 190, 206 (1919), quoting *National Bank of Commerce* v. *New Bedford*, 175 Mass. 257, 262 (1900) (" 'fair cash value' . . . means the highest price that a normal purchaser, not under peculiar compulsion, will pay at that time to get that thing"), we conclude that the Legislature could permissibly determine that the actual sales price is a reasonable approximation of a property's fair cash valuation for G. L. c. 59, § 2C, purposes, at least in an arm's-length transaction, and absent contrary evidence. *Tennessee Gas Pipeline Co.* v. *Assessors of Agawam*, 428 Mass. 261, 263 (1998) (purchase price is best evidence of fair cash value). *Assessors of Quincy* v. *Boston Gas Co.*, 309 Mass. 60, 63 (1941). See *Ramacorti* v. *Boston Redevelopment Auth., supra*. That value may substitute, until assessments are made in the ordinary course, for the assessors' determination of fair cash value. *C & S Wholesale Grocers, Inc.* v. *Westfield*, 436 Mass. 459, 463 (2002) (assessing improvements reduces disproportion). *Keniston* v. *Assessors of Boston, supra*. *Irving Usen Co.* v. *Assessors of Boston*, 309 Mass. 544, 545 (1991) (lease

cannot affect taxation date). Cf. *Cheshire* v. *County Comm'rs of Berkshire*, 118 Mass. 386, 389 (1875) (while it is impossible for tax statutes to "secure exact equality or proportion," valuation methods may not be arbitrary and unequal, and their aim must be to approximate such proportion).

c. *"As applied" challenge.* The taxpayer also challenges the constitutionality of G. L. c. 59, § 2C, "as applied" to it or to the property.[11] As the board recognized, the taxpayer's choice to present scant evidence in the abatement proceeding is consistent with a facial challenge to the constitutionality of G. L. c. 59, § 2C. Assuming the taxpayer has grounds to challenge the constitutionality of § 2C as applied in this case, see note 11, *supra*, that choice does not reduce a taxpayer's burden of proving that a statute "as applied" is unconstitutional. *Shoppers' World, Inc.* v. *Framingham*, 348 Mass. 366, 377 (1965).

In this case, there is no dispute that, for purposes of the 2001 real estate tax, the assessors valued the property as of January 1, 2000, at $3,281,600. The taxpayer argues that, given that it had purchased the properties only two weeks before that valuation date (on December 17, 1999) for $4,500,000, the purchase price is "presumably likewise substantially higher than the fair cash value on the preceding January 1, 1999." As the board noted, however, the taxpayer offered no evidence of the fair cash value as of January 1, 1999, for purposes of a fiscal year 2000 assessment. See *Coomey* v. *Assessors of Sandwich*, 367 Mass. 836, 838 (1975) (taxpayer bears burden of establishing existence of scheme of disproportionate assessment). Nor did it offer any other substantial evidence on which the board could make a determination of fair cash value as of January 1, 1999 (for fiscal year 2000 purposes). Indeed, the taxpayer did not provide a description of the properties, other than the bare legal description contained in the deeds, and did not offer evidence of market conditions from which the board could determine that the fiscal year 2001 assessed value (as of January 1, 2000) or the purchase

---

[11]In its amicus brief, the Attorney General suggests that a "taxpayer subject to assessment under § 2C should not be permitted to claim that the statute is unconstitutional 'as applied' merely because some other valuation method would result in a different estimate of fair cash value for its property." We need not decide the issue in this case because, even assuming the taxpayer has grounds to challenge G. L. c. 59, § 2C, as applied, it failed to meet its burden of proving the claim.

price could or should be adjusted. Finally, the taxpayer did not offer evidence concerning the sale of the properties that would suggest there were unique circumstances or some relationship between the parties that would make the purchase price weak evidence of fair cash value. See, e.g., *Pepsi-Cola Bottling Co.* v. *Assessors of Boston*, 397 Mass. 447, 449-450 (1986); *Foxboro Assocs.* v. *Assessors of Foxborough*, 385 Mass. 679, 682-683 (1982).

In short, there was no basis before the board on which it could be determined that the purchase price was not an appropriate barometer of the properties' fair cash value: the taxpayer failed to make the requisite showing that the fair cash value on January 1, 1999, was different from the assessors' levy. On the record before it, the board properly concluded that the taxpayer failed to demonstrate that the tax imposed under G. L. c. 59, § 2C, was disproportionate. See *General Mills, Inc.* v. *Commissioner of Revenue*, 440 Mass. 154, 161 (2003), cert. denied, 541 U.S. 973 (2004) (board's findings are final); *Stilson* v. *Assessors of Gloucester*, 385 Mass. 724, 729 (1982) (same). Without evidence to the contrary, it is unnecessary and illogical to infer that sophisticated parties would pay more than the fair cash value at the time of the transaction, and the board properly rejected that notion.

*Conclusion.* A taxpayer has no constitutional right to avoid paying taxes on property it purchases during the middle of a fiscal year from a tax-exempt organization. General Laws c. 59, § 2C (*a*), is a constitutionally valid exercise of the Legislature's power, for the affected fiscal year, to require the taxpayer to pay a proportionate tax on newly taxable property.

*Decision of the Appellate Tax*
*Board affirmed.*